SPEROS T. LOLOS *vs.* JEROME I. BERLIN & another.

Hampden.   September 24, 1958. — October 30, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Sale,* Rescission, Sale of business. *Equity Jurisdiction,* Rescission. *Fraud. Deceit.  Supreme Judicial Court,* Argument. *Equity Pleading and Practice,* Bill, Amendment.

A mere reference in a brief to exceptions taken to a master's report in a suit in equity was not an argument of the questions raised thereby as required by Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698.   [13-14]

A buyer of a business could not maintain a suit in equity to rescind the purchase on the ground of fraud and intentional misrepresentations by the seller where it appeared merely that the seller made small overstatements of the values of certain items without intent to deceive or fraudulent purpose.   [14]

A buyer of all the capital stock in a corporation could not maintain a suit in equity for rescission of the purchase and recovery of the purchase price where, although he then held all the stock and could return it to the seller, the assets of the corporation at that time had been depleted by a substantial amount.   [14]

Upon appeal by the plaintiff from a final decree dismissing the bill in a suit in equity after a full trial at which it was established that the plaintiff, although not entitled to rescission of a purchase of a business, the sole objective of his bill, was owed a certain sum by the defendant in connection with the purchase transaction, this court deemed it an appropriate case for the allowance by the Superior Court of an amendment to the bill to permit the plaintiff to recover such sum.   [14-15]

BILL IN EQUITY, filed in the Superior Court on April 27, 1955.

The plaintiff appealed from an interlocutory decree confirming a master's report by *Paquet,* J., and from a final decree dismissing the bill by *Meagher,* J.

*Gerson Askinas,* for the plaintiff.

*Emerson S. Searle & Vincent J. Panetta,* for the defendants, submitted a brief.

SPALDING, J. In this suit seeking rescission of the sale of a business, the master to whom the case was referred found the following facts: The defendant Berlin was the owner of all of the capital stock of a corporation known as The House of Carpets, Inc. The corporation was engaged in the business of selling rugs in Springfield. The plaintiff wished to acquire a business, and entered into negotiations with Berlin for the purchase of his stock. After many conferences the plaintiff, Berlin and the corporation entered into a written agreement on March 23, 1955. The agreement provided for a sale of all of the capital stock of the corporation to the plaintiff for $5,400. Berlin agreed that the corporation would own at the time of transfer inventory of a wholesale value of $5,900 as shown by a list attached to and made part of the agreement, all the fixtures and personal property then used in the corporation's business, and accounts receivable as listed in a record attached to the agreement and incorporated therein by reference. The agreement also provided that the liabilities on the date of transfer would be as set forth on a list attached to the agreement and incorporated therein by reference. The plaintiff agreed to assume all liabilities set forth in this list. The agreement provided that insurance held by the corporation should be adjusted as of the date of transfer. Berlin agreed to deposit the sum of $1,250 with the defendant Panetta, who acted as Berlin's attorney in the transaction. This sum was to be held by Panetta in escrow for the following purposes: $250 to be held for three months to be applied in payment of any liabilities existing on the day of the transfer which did not appear on the list attached to the agreement; and $1,000 to be held to guarantee that the landlord of the premises occupied by the corporation would execute a lease for an additional term of two years at a rental no greater than $275 per month. In the event that a higher rent was demanded, Panetta was to pay to the plaintiff the amount of the increase but only to the extent of $1,000.

The plaintiff was represented by counsel at the time of the execution of the agreement. Within a few days after

the transfer of the property (which took place on the same day or the day after the contract was signed) the plaintiff employed another attorney, and with him had several interviews with Berlin and Panetta. The plaintiff complained of discrepancies concerning the inventory, accounts payable and accounts receivable, and Berlin promised to investigate these matters. The plaintiff also had several conferences with the defendant Berlin alone shortly after the sale and before any claim of fraud or misrepresentation was made. At these conferences the plaintiff told Berlin that he was not suited for business and had had no prior business experience, and that the transaction was causing distress to him and his wife. He asked Berlin to take the stock back and return the purchase money, but Berlin refused to do so. No charge of fraud or deceit was made by the plaintiff at any of these conferences. The conferences took place after the time alleged by the plaintiff in his bill that he had discovered that certain of Berlin's representations were fraudulent.

On April 27, 1955, while negotiations with regard to the plaintiff's complaints were being conducted, the plaintiff's attorney told the defendant Panetta that he was preparing a bill in equity based on fraud and intentional misrepresentation. This disclosure terminated all discussions between the parties. On the same day the defendant Panetta notified the plaintiff that he had assigned to himself as attorney for the defendant $1,000 of the escrow money.[1] The master concluded that the plaintiff showed no right with respect to this fund, as he had voluntarily abandoned any attempt to renew the lease with respect to which the fund was put in escrow.

---

[1] The plaintiff in his bill alleged that the representations made in the contract of sale as to the value of the inventory and the accounts receivable, and as to the amounts of the accounts payable, were false and known to be false by the defendant Berlin and were made with the intent to defraud and deceive the plaintiff. It was also alleged that certain prepaid insurance owned by the corporation was represented to be worth more than its actual value. The plaintiff prayed that the contract be cancelled and rescinded; that the defendant Panetta be restrained from paying out any of the $1,250 held in escrow; and that the money paid by him to Berlin be refunded, with all funds held by Panetta to be turned over to the plaintiff to apply against the refund. There was also a prayer for general relief.

At the time that the agreement was executed, Berlin represented that the corporation owned certain prepaid insurance to the value of $532. This value was overstated in the amount of $404.41 but the representation was not made with any intent to deceive. When the error was discovered, and before the bill of complaint was brought, Berlin offered to pay $404.41 to the plaintiff out of the $1,000 escrow fund. The plaintiff refused to accept payment from the escrow fund and insisted that Berlin make it out of his personal resources.

Three items in the list of accounts receivable, amounting in all to $263.74, were overstated, but this was done unintentionally and with no fraudulent purpose.

With respect to the inventory and accounts payable, the master concluded that the plaintiff had failed to establish any discrepancy.

When, in his bill, the plaintiff first demanded that the contract be rescinded and offered to restore the capital stock of the corporation to Berlin, he still had all of the stock, but the assets of the corporation had dwindled by a substantial amount. On July 26, 1955, nearly three months after the commencement of suit, the plaintiff caused The House of Carpets, Inc., to execute an assignment for the benefit of creditors.

The ultimate finding of the master was in favor of the defendants Berlin and Panetta, except in so far as the bill of complaint as drawn would support a finding that the defendant Berlin owes the plaintiff the sum of $668.15 (this being the total of the difference between the value of the prepaid insurance and the accounts receivable as represented, and the actual value of these assets). The master was of the opinion that the plaintiff could not recover these sums under the bill as drawn.

An interlocutory decree was entered confirming the report of the master and overruling the plaintiff's exceptions to the report. A final decree was entered dismissing the bill. From these decrees the plaintiff appealed.

The exceptions to the master's report could very well be

disposed of on the ground that they have not been argued. Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698. There is, to be sure, a terse and very sketchy reference to the exceptions in the plaintiff's brief, but it falls short of anything that can properly be called argument. See *Donahue* v. *Dal, Inc.* 314 Mass. 460, 464. The requirement of Rule 13 is no mere technicality. It is founded on the sound principle that the right of a party to have this court consider a point entails a duty; that duty is to assist the court with argument and appropriate citation of authority. An examination of the exceptions, however, reveals that they are utterly lacking in merit. No discussion of them is required.

It is plain that on the findings of the master the plaintiff failed to make out a case for the rescission of the sale. The representations in the agreement as to what the assets and liabilities "will be" on the date of transfer related to the future and were promissory in nature. *Galotti* v. *United States Trust Co.* 335 Mass. 496, 501. They were not representations of existing facts. But apart from this, such discrepancies in the accounts receivable as were found to exist were not of such materiality, when viewed in the light of the entire transaction, as to warrant rescission. *Exchange Realty Co.* v. *Bines*, 302 Mass. 93, 98.

Moreover, the master found that when the bill was brought the assets of the corporation had been depleted to such an extent that the plaintiff, despite his offer to restore in the bill, was in no position to do so. For this reason, if for no other, the plaintiff was not entitled to rescind. *Zintz* v. *Golub*, 260 Mass. 178, 180. *Jurewicz* v. *Jurewicz*, 317 Mass. 512, 517. The findings here afford no occasion for restoration on the basis permitted in *Bellefeuille* v. *Medeiros*, 335 Mass. 262, 266–267.

It remains to consider whether the plaintiff is entitled to recover the sum of $668.15 (representing the overpayment of $404.41 on insurance and the discrepancies of $263.74 in the accounts receivable) which the master found was due the plaintiff if it was recoverable in this proceeding. An

examination of the bill shows that its sole objective was rescission; hence damages of the sort under consideration would not be recoverable under it. "It is settled that in equity a party may not obtain relief that is inconsistent with the specific relief prayed for, even though an express or implied prayer for general relief is contained in the pleading." *Enterprises, Inc.* v. *Cardinale,* 331 Mass. 244, 247. *Bleck* v. *East Boston Co.* 302 Mass. 127, 130–131.

However, after a full trial it has been established that the plaintiff, although not entitled to rescission, is owed the sum of $668.15 by the defendant. The plaintiff should not have to recover this sum in a separate proceeding. This is an appropriate case for the allowance of an amendment. *Seder* v. *Kozlowski,* 304 Mass. 367, 369, 370–371. *Tompkins* v. *Sullivan,* 313 Mass. 459, 461, 463–464.

The interlocutory decree is affirmed. The plaintiff is given leave, if so advised, within thirty days after the date of the rescript, to apply to the Superior Court for such amendments to his bill as will permit the recovery of $668.15 with interest; if such amendments are allowed, then the final decree is to be modified so as to award him damages in that amount. Otherwise the final decree is to be affirmed. The defendants are to have costs of this appeal.

*So ordered.*