Warren W. DOUGAN, Petitioner,
Appellant,

v.

Joseph PONTE, Respondent, Appellee.

No. 83–1297.

United States Court of Appeals,
First Circuit.

Argued Oct. 4, 1983.

Decided Feb. 14, 1984.

Owen S. Walker, Boston, Mass., for petitioner, appellant.

Warren W. Dougan on brief, pro se.

William D. Luzier, Jr., Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley, Asst. Atty. Gen., Chief, Crim. Bureau, and Barbara A.H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Div., Boston, Mass., were on brief, for respondent, appellee.

Before COFFIN, Circuit Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

COFFIN, Circuit Judge.

The petitioner, Warren Dougan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dougan, who was convicted by a Massachusetts state court of rape, kidnapping, armed robbery, and committing an unnatural act, alleges that his constitutional rights were violated during his state trial. The United States District Court for the District of Massachusetts dis-

* Of the Second Circuit, sitting by designation.

missed petitioner's claims on the merits. Because we conclude that petitioner failed to exhaust two of his three claims before bringing this petition in federal court, we do not reach the merits of his claim. We therefore affirm the district court's dismissal on a different ground.

The facts supporting Dougan's conviction are reported in the opinion of the Massachusetts Supreme Court, 377 Mass. 303, 386 N.E.2d 1 (1979) and 377 Mass. 303, 386 N.E.2d 1 (1979); we will summarize them briefly. In the early evening of March 29, 1974, James Lopes returned from work to the home he shared with his girlfriend, Maryanne Connolly, and her infant son. When he reached his home, Lopes was met by two men known to him through their mutual membership in a motorcycle club. After the three men and Ms. Connolly had spoken amiably for several minutes, the two men suddenly produced guns, pistol-whipped Lopes, and took him at gunpoint by car to an apartment. There the two men telephoned Dougan, who had known Lopes since 1961 and had sponsored Lopes for membership in the motorcycle club. Dougan came to the apartment, accused Lopes of having made telephone calls to Dougan's girlfriend, and struck Lopes when Lopes denied having made the calls. Lopes was then taken back to his own home where he was gagged, tied, and hit in the chest with a spiked dog collar. Thereafter Dougan (and another) forced Ms. Connolly to engage in sexual intercourse and to perform fellatio in the presence of her son and Lopes. Before leaving, the three assailants beat Lopes into unconsciousness and warned Ms. Connolly not to call the police.

Neither Lopes nor Connolly immediately reported the incident. At Dougan's trial Lopes testified that he had delayed reporting the incident to police because he had been hiding from his assailants. He said that in the weeks after the March 29 incident his house had been robbed, he had been forced off the road by a car while riding his motorcycle, and a car had raced by him while he was crossing the street. In June, 1979, Lopes was arrested for selling guns illegally. After his arrest he reported the events of March 29 and cooperated with the police investigation.

Dougan raises constitutional objections to three aspects of his trial. He argues that he was prejudiced by the introduction of testimony describing committed and attempted crimes against Lopes that occurred subsequent to March 29, that his right to cross-examine witnesses was improperly abridged, and that the prosecutor made improper remarks during his closing argument that deprived Dougan of his right to a fair trial.

Respondent concedes that the second of these issues was exhausted in state court. The brief filed in the Massachusetts Appeals Court (and relied upon before the Supreme Judicial Court) cited the Confrontation Clause of the Sixth Amendment and numerous Supreme Court and federal circuit court precedents. The opinion of the Supreme Judicial Court obviously dealt with the federal constitutional issue. 386 N.E.2d at 5.

The first and third issues, however, stand on quite a different footing and require us to undertake a rather exacting review of the presentation of petitioner's contentions in the state courts. Although the magistrate below reported his recommendation that the petition be dismissed as a mixed petition, i.e., as one involving both exhausted and unexhausted claims, *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the district court sustained petitioner's objections and proceeded to the merits. Petitioner's objections relied simply on the two captions in his state court brief, which argued that allowing evidence of other criminal acts or attempts and the prosecutor's closing argument "deprived the defendant of a fair trial".

■ We begin with general principles. A habeas petitioner "must have 'fairly presented' to the state courts the 'substance', of his federal habeas corpus claim", *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 278, 74 L.Ed. 3, 7 (1982) (per curiam) (quoting *Picard v. Conner,* 404 U.S. 270, 277–78, 92 S.Ct. 509, 513–14, 30 L.Ed.2d

438 (1971)), to satisfy the exhaustion requirement. "[F]or the substance of a claim to have been advanced before the state courts, the same legal theory must have been presented to them." *Williams v. Holbrook,* 691 F.2d 3, 9 (1st Cir.1982).

General principles, however, do not carry us as far as we need to go. The opinion of the Second Circuit in *Daye v. Attorney General of State of New York,* 696 F.2d 186 (2d Cir.1982) (en banc) is a laudable recent effort to give more specific guidelines. In that case the court discussed the various ways in which a petitioner can successfully claim that he has presented the same legal theory to the state court. These include citing a specific provision of the Constitution; presenting the substance of a federal constitutional claim in such manner that it "must have been likely to alert the court to the claim's federal nature", *id.* at 192; reliance on federal constitutional precedents; and claiming "a particular right specifically protected by the Constitution", *id.* at 193.

The court then dealt with the problem posed in the instant case saying:

"The greatest difficulty arises when in the state court the petitioner has described his claim in very broad terms, such as denial of a 'fair trial'." *Id.* at 193.

In such a case, the court, according to *Daye,* is to determine whether or not there is an "allegation of a pattern of facts that is well within the mainstream of constitutional litigation". *Id.* at 194. In other words, the concept of "unfairness" embraces a continuum, ranging from relatively minor departures from required conduct to breaches of the most basic requisites of a fair trial (such as, in *Daye,* an allegedly hostile and biased judge). The *Daye* court cited with approval its prior language in *Kirksey v. Jones,* 673 F.2d 58, 60 (2 Cir.1982):

"Alleging lack of a fair trial does not convert every complaint about evidence or a prosecutor's summation into a federal due process claim."

1. Counsel for petitioner did not address the exhaustion issue in his main brief on appeal,

■ This language is applicable to the case at bar. The alleged derelictions are (1) an improper allowance of two instances of supposed attempts to run over Lopes by an unknown driver (evidence of a third event, the robbery of Lopes's home was not objected to) which arguably could reflect on petitioner, and (2) the prosecutor's improper disparagement of "motorcycle gang[s]" and petitioner's association with one of them. These fall precisely within the category of alleged errors whose description does not in and of itself raise the red flag of constitutional breach. *Donnelly v. De Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). As the court in *Kirksey, supra,* 673 F.2d at 60, observed: "State court briefs routinely characterize a variety of errors as a denial of a fair trial, conveying the thought that the error, simply as a matter of state law, warrants a new trial."

In this case there were no indicia other than the opaque labels of "unfair trial" in the issue captions of petitioner's state court brief to alert the court to any lurking federal constitutional question. In the discussion of the two issues we examine here, there was no reference to a constitutional provision or specific right or to any case, state or federal, which rested on a constitutional ground. Nor was there any claim specifically implicating a particular constitutional right, such as a claim that the prosecutor commented on the petitioner's failure to testify on his own behalf, or that the prosecutor made knowing use of perjured testimony. *See Donnelly v. De Christoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *Blankenship v. Estelle,* 545 F.2d 510, 514–15 (5th Cir.1977).

■ In briefing the first issue (regarding the admission of evidence of other supposedly criminal assaults) petitioner referred to one federal case, *United States v. Burton,* 525 F.2d 17 (2nd Cir.1975), citing its harmless and, we add, nonconstitutional error holding as something to be contrasted with his own situation where he contended that error could not be called harmless.[1] In

which was practically petitioner's state brief *in haec verba,* except for the deletion of referenc-

briefing the third issue (the prosecutor's argument), petitioner's brief cited many state cases but only three federal cases. Two of them, *Hall v. United States,* 419 F.2d 582, (5th Cir.1969) and *United States v. Peak,* 498 F.2d 1337 (6th Cir.1974), simply referred to the old case, *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) where the Court, citing only state cases, described the restrained conduct expected of a prosecutor. The third case, *United States v. Wigoda,* 521 F.2d 1221 (7th Cir.1975), merely held that a prosecutor's argument, while "close to the line" did not constitute prejudicial error.

In contrast, discussion of the issue involving the trial court's restriction of cross-examination abounded in references to the Sixth Amendment, to Supreme Court and other federal cases, and to state cases discussing federal constitutional doctrine. As if to accentuate the federal focus of this issue, petitioner's brief had a solitary addendum quoting the Sixth Amendment.

■ In short, the most meticulous search on the part of the state court would have turned up nothing suggesting that petitioner was making a federal due process argument. But we add that even had one case out of forty in petitioner's brief alluded to a federal constitutional ground, we would view the case no differently. Where a habeas corpus petitioner's only basis for contending that he has exhausted state remedies is the citation of state or federal authorities employing constitutional analysis such authorities must play a prominent part in his state court argument. This being so, the only safe course for a petitioner is explicitly to identify his federal constitutional claims before the state court. This course will not only give the state courts a fair opportunity to correct any constitutional error but will obviate the need for the sort of minute retrospective dissection of state

es to Massachusetts cases. In his reply brief petitioner relies on the fact that in his state court brief he cited *Commonwealth v. Banuchi,* 335 Mass. 649, 141 N.E.2d 835 (1957), which in turn quoted *Commonwealth v. Stone,* 321 Mass. 471, 473, 73 N.E.2d 896 (1947) as to what constitutes fairness in a criminal trial. Aside

court proceedings that this opinion exemplifies.

*The judgment of the district court is affirmed for failure to exhaust state remedies.*

from the fact that *Stone* itself was cited to the state court and does not need *Banuchi* to gain access to our consideration, *Stone* invokes only state authorities and does nothing to advance the thought that federal due process analysis was being employed.