Bryan A. DYER, Petitioner, Appellant,

v.

Joseph PONTE, Respondent, Appellee.

No. 84–1312.

United States Court of Appeals,
First Circuit.

Argued Oct. 2, 1984.

Decided Nov. 28, 1984.

Henry D. Katz, Boston, Mass., by appointment of the Court, for petitioner, appellant.

Paula J. DeGiacomo, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley and Barbara A.H. Smith, Asst. Attys. Gen., Boston, Mass., were on brief for respondent, appellee.

Before COFFIN, Circuit Judge, TIMBERS,* Senior Circuit Judge, and BOWNES, Circuit Judge.

COFFIN, Circuit Judge.

Appellant, Bryan A. Dyer, appeals dismissal of his petition for a writ of habeas corpus. Dyer, who was convicted by a Massachusetts state court on four counts of murder, as well as for armed robbery and the unlawful carrying of a firearm, claims that his constitutional right to due process was violated during his state court trial. He points to the trial judge's allegedly improper joint enterprise instruction to the jury and to the judge's failure to exclude unreliable eyewitness identification testimony. The district court rejected both of Dyer's claims; it found that the eyewitness identification claim was barred by *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and that the joint enterprise claim failed on the merits. We affirm, adopting in its entirety the district court opinion on the eyewitness identification issue. Although we agree generally with the district court's conclusion on the merits on the joint enterprise claim, we

* Of the Second Circuit, sitting by designation.

think it important to note our concern as to whether the petitioner adequately exhausted his remedies in state court.

## 1. Background

The facts surrounding the four murders are described in full in the opinion of the Massachusetts Supreme Judicial Court affirming Dyer's conviction. *Commonwealth v. Dyer*, 389 Mass. 677, 451 N.E.2d 1161 (1983). The district court summarized the pertinent state court proceedings:

"The bodies of the four victims were found on the morning of September 22, 1980 in a room at the rear of Sammy White's Brighton Bowl in Boston. Each of the victims had been shot in the head with a .38 caliber handgun, and each had received multiple blunt injuries to the head. The victims were found lying on the floor with their hands restrained behind their backs. The bowling alley's safe had been opened, and approximately $4,000 was missing.

"In his opening statement, the prosecutor told the jury that the Commonwealth would prove that Dyer alone committed the murders, and the evidence the Commonwealth offered did not specifically implicate anyone other than the petitioner. During his cross-examination of two of the Commonwealth's expert witnesses, however, the defendant's counsel repeatedly asked the witness whether it was not more likely that the murders were committed by a number of persons rather than by a lone gunman. The witnesses declined to offer an opinion on this question.

"After closing arguments, just before he charged the jury, the trial judge told the prosecutor and the defense attorney for the first time that he intended to charge the jury on the law of joint enterprise. Over the objections of the defendant, he did so charge, as follows:

" 'Now ladies and gentlemen, some suggestion has been made that perhaps these crimes were committed by more than one person. This raises the concept known as the law of joint en-

terprise. Under the theory of joint enterprise, a defendant must have associated himself with a criminal venture and participated to some extent in the commission of the crime.

" 'In order to find the defendant guilty of a crime or crimes, under this theory of the law, the Commonwealth must prove two things beyond a reasonable doubt. First, that the defendant associated himself with a criminal venture. And, second, that the defendant participated to some extent in the commission of the crime or crimes. In short, in order to convict a defendant of the crimes with which he is charged, you must find beyond a reasonable doubt that he actively or that he was actively engaged in committing these crimes, irrespective of whether other persons were or may have been involved.' "

In his petition for habeas corpus, Dyer claims that this joint enterprise instruction violated his right to due process in two ways. First, he argues that the instruction should not have been given at all because it allowed the jury to convict him on the basis of matters not in evidence, i.e., it allowed speculation that the crime was committed by more than one person and that Dyer was only one of several perpetrators. That speculation violated his rights, he argues, because he had relied on alibi and mistaken identification defenses which would be undercut by the suggestion that others were involved in the crimes. Dyer's second argument addresses an aspect of the joint enterprise instruction to which he did not object at trial. In charging the jury on joint enterprise, the judge omitted the element of intent, and Dyer argues that the jury could therefore have found him guilty without finding every element of the crime beyond a reasonable doubt, thereby violating his due process rights.

The Commonwealth responds that Dyer failed to exhaust his state remedies, as required by 28 U.S.C. § 2254, and, even if he did, the joint enterprise instruction met constitutional requirements. The district court held that Dyer had exhausted the

joint enterprise claim, but that the instructions did not deprive him of due process. We consider both aspects of this issue below.

### 2. Discussion

#### a. *Exhaustion*

28 U.S.C. § 2254 explicitly requires that an applicant for a writ of habeas corpus exhaust his state remedies before challenging his conviction in federal court. We have recently discussed the threshold a petitioner must cross to meet this requirement:

> "A habeas petitioner 'must have "fairly presented" to the state courts the "substance", of his federal habeas corpus claim', *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 278, 74 L.Ed.[2d] 3, 7 (1982) (per curiam) (quoting *Picard v. [Connor]*, 404 U.S. 270, 277–78, 92 S.Ct. 509, 513–14, 30 L.Ed.2d 438 (1971)), ..." *Dougan v. Ponte*, 727 F.2d 199, 200 (1st Cir.1984).

In *Dougan*, the petitioner argued that he satisfied this requirement, and raised his constitutional objections to the conduct of his state trial, simply by including the words "unfair trial" in the issues captions of his state court brief. He made no reference to a constitutional provision or specific right and cited no cases which rested on constitutional grounds. We concluded that the claims had not been exhausted because "the most meticulous search on the part of the state court would have turned up nothing suggesting that petitioner was making a federal due process argument." *Id.* at 202.

Dyer has done barely more than the petitioner in *Dougan*. In his main brief to the Massachusetts Supreme Judicial Court, Dyer made two references to the Four-

teenth Amendment, arguing that the joint venture charge "irreparably harmed the Defendant and deprived him of his right to a fair trial under the Fourteenth [sic] Amendment to the United States Constitution", and that the instruction "emasculated the defense strategy and deprived the defendant of due process of law as guaranteed by the Fourteenth Amentment [sic] of the United States Constitution and the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts." In his reply brief, Dyer made no specific references to the Fourteenth Amendment, but several times argued that the instructions violated his right to due process. One such argument was that

> "[t]he inclusion of a joint enterprise instruction in the charge to the jury deprived the defendant of due process of law and authorized the jury to return a verdict of guilty on that theory despite a lack of evidence."

 We have doubts about whether these cursory references to the Fourteenth Amendment and due process were sufficient to raise the constitutional issue before the Supreme Judicial Court. Dyer cited no federal cases in his state court brief and made virtually no federal argument, in sharp contrast to his extensive discussion of the issue under state law.[1] Although Dyer's express reference to the Fourteenth Amendment would seem to meet the exhaustion requirements spelled out in *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 192 (2d Cir.1982) (en banc), *cert. denied*, ── U.S. ──, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984), which we cited with approval in *Dougan*, 727 F.2d at 201, we believe the instant case comes close to implicating *Dougan*. A petitioner need not cite " 'book and verse on the federal consti-

---

**1.** By the time he reached the federal courts with his habeas corpus petition, and in response to the Commonwealth's exhaustion argument, Dyer apparently recognized that his state court briefs may have been inadequate, and he added citations to two U.S. Supreme Court cases as support for his due process argument.

Moreover, although it is not dispositive on the issue of exhaustion, the Supreme Judicial Court

analyzed the joint enterprise claim solely from the perspective of state law. *See Smith v. Digmon*, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978); *Williams v. Holbrook*, 691 F.2d 3 (1st Cir.1982) (defendant need only present constitutional claims to state court; "she need not demonstrate that those courts either addressed or decided them", *id.* at 8).

tution' ", *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971) (quoting *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir.1958)), to exhaust his state remedies, but we question whether a petitioner who *only* cites " 'book and verse' " has done enough to inform the state court of his federal constitutional claim. Thus, although we have decided to address Dyer's petition on the merits, we think counsel would be well advised in the future not to rely on a passing reference to a constitutional provision without supporting federal argument and without citations to federal authorities.[2]

### b. Merits of the Joint Enterprise Claim

Dyer makes two arguments regarding the constitutional deficiency of the joint enterprise instruction. He argues first that the instruction should not have been given at all because there was no direct evidence suggesting that there was more than one murderer. We commend the district court's treatment of this aspect of the

joint enterprise issue, and adopt it as our own.

■ Dyer also argues that the joint enterprise instruction violated his right to due process because the trial judge neglected to include the element of intent; as a result, the state allegedly failed to meet its constitutionally imposed burden of proving every element of the crime beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Both the Supreme Judicial Court and the district court concluded that the charge, taken as a whole, required the jury to find that Dyer acted intentionally, whether it found him guilty on the theory that he acted alone or on the joint enterprise theory.

Although we agree with the district court and the Supreme Judicial Court that the instructions in this case did not deprive Dyer of due process, we wish to emphasize that it is the particular circumstances of this case which lead us to that conclusion. Omitting an element as critical as intent from a jury charge, especially when that

---

**2.** Such a minimal showing also could prove fatal to a constitutional claim like Dyer's on state procedural grounds. Rule 16(a)(4) of the Massachusetts Rules of Appellate Procedure requires that:

"[t]he argument ... shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefore, with citations to the authorities, statutes and parts of the record relied on.... The appellate court need not pass upon questions or issues not argued in the brief."

The Supreme Judicial Court has determined that when a defendant offers no legal authority to support his claim, that "failure adequately to address the issue constitutes a waiver", *Commonwealth v. Elder,* 389 Mass. 743, 747, 452 N.E.2d 1104 (1983), and even when a brief refers to constitutional issues and cites supporting authority, where the argument is conclusory and consists of generalized assertions, it may not comply with Rule 16(a)(4), *Beaton v. Land Court,* 367 Mass. 385, 389–90, 326 N.E.2d 302, *appeal dismissed,* 423 U.S. 806, 96 S.Ct. 16, 46 L.Ed.2d 27 (1975).

"The requirement of [Rule 16(a)(4)] is no mere technicality. It is founded on the sound principle that the right of a party to have this court consider a point entails a duty; that duty is to assist the court with argument and

appropriate citation of authority." *Lolos v. Berlin,* 338 Mass. 10, 14, 153 N.E.2d 636 (1958).

Since the Supreme Judicial Court did not address the federal constitutional issue in this case, it may have concluded that Dyer failed to adequately present his Fourteenth Amendment claim in accordance with Rule 16(a)(4). If so, the state court may have deemed the federal argument to have been waived, which might well constitute an independent state procedural ground barring our consideration of the federal issue. *See Webb v. Webb,* 451 U.S. 493, 498 n. 4, 101 S.Ct. 1889, 1892 n. 4, 68 L.Ed.2d 392 (1981).

"At the minimum ... there should be no doubt from the record that a claim under a *federal* statute or the *Federal* Constitution was presented in the state courts and that those courts were apprised of the nature or substance of the federal claim *at the time and in the manner required by the state law* [final emphasis added]. Otherwise, we cannot be sufficiently sure, when the state court whose judgment is being reviewed has not addressed the federal question that is later presented here, that the issue was actually presented and silently resolved by the state court against the petitioner...." *Id.* at 501, 101 S.Ct. at 1894.

element is required by state law,[3] would seem to be a harmful error of constitutional dimensions in many situations; without it, the joint enterprise instruction might indicate that a conviction is appropriate for one whose acts constituted a relatively low level of participation in the crime.[4] Several factors, however, suggest this is not such a case. First, in charging the jury on the murder, robbery and weapons counts, the judge accurately explained the mental state required for those crimes. His charge on joint enterprise explained that the Commonwealth had the burden of proving that the defendant associated himself with the crimes, that he participated in them, and that he was actively engaged in committing them. Although his charge on joint enterprise did not include the issue of mental state explicitly, the language he used, following closely after the full instructions including mental state, in all likelihood conveyed to the jury that it had to find that Dyer shared the requisite mental state with the principal, if there was one.[5]

We do not rely alone on the wording of the instruction. Critically relevant to our conclusion is the context in which the joint enterprise issue arose in the trial. The judge's decision to give the joint enterprise instruction stemmed largely from questioning which suggested that more than one person would likely have been involved when four persons were bludgeoned and shot to death at the same time. Thus, we are confident that any conclusion by the jury that Dyer was only a joint enterpriser must have been based on a belief that he was present at the crime, and actively participated with criminal intent, although he may not have been the only one involved.[6]

We also note that Dyer failed to object to the form of the instruction when it was given, focusing only on whether a joint enterprise instruction was justified at all. Although a retrospective scrutiny limited to the particular instruction reveals its imperfection, Dyer's failure to object at the time of trial further suggests to us that the instruction, in the context in which it was given, fully conveyed the need to find that he intended the crimes with which he was charged.[7]

---

3. The Commonwealth concedes that under Massachusetts law

 "a proper charge on [joint enterprise] comprises the element of the abettor's sharing (it may be in a conditional sense) the mental state or intent of the main actor, and the element of actual participation by the abettor." *Commonwealth v. Whitehead,* 379 Mass. 640, 650, 400 N.E.2d 821 (1980).

4. We do not mean to suggest that specific reference to "intent" or "mental state" must be included to avoid constitutional problems. In *Commonwealth v. Whitehead,* 379 Mass. 640, 400 N.E.2d 821 (1980), for example, the judge first used language much like the language used by the judge in this case, requiring that the defendants " 'associated themselves with a criminal venture and participated in the commission of the offense to some extent.' " *Id.* at 650, 400 N.E.2d 821. He went on, however, quoting from *Commonwealth v. Morrow,* 363 Mass. 601, 609, 296 N.E.2d 468 (1973): "One who is present during the commission of a crime, *assents to it,* and by arrangement is in a situation where he might render some aid to the perpetrator, is a principal." *Id.* at 650–51, 400 N.E.2d 821 (emphasis added). The judge further added, in metaphor: " '[A] definition of what is meant by acting in concert is two or more musicians playing together, making somewhat different contributions, with the *common purpose of intending to produce a single result,* a melody.' " *Id.* at 652, 400 N.E.2d 821 (emphasis added). The instruction in the instant case falls short of this varied description of joint enterprise.

5. Federal law requires us to review the charge as a whole, *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973).

6. The judge, in fact, explained that he gave the instruction to be certain the jurors understood that they had to find that Dyer *actively* participated in the crime to convict him, whether or not others were involved.

7. The failure to object also potentially raises an issue under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Although the Supreme Judicial Court did consider the issue on the merits, we note that the claim may nevertheless have been barred by *Wainwright. See McCown v. Callahan,* 726 F.2d 1 (1st Cir.1984) (state court did not waive the procedural defect of failure to object to jury charge even though it addressed issue on the merits). We choose not to consider this point in light of our disposition of this case.

These conclusions about the context of the joint enterprise charge lead us to our final point. Even if it could be argued that it is always constitutional error to omit the element of mental state from a joint enterprise instruction, we find that in the circumstances of this case, such error was harmless beyond all reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

*For the foregoing reasons, the judgment of the district court is affirmed.*