Normand GAGNE, Petitioner, Appellant,

v.

Michael FAIR, Commissioner of
Corrections, Respondent,
Appellee.

No. 87–1401.

United States Court of Appeals,
First Circuit.

Heard Oct. 7, 1987.
Decided Dec. 10, 1987.

Stephen Hrones, by Appointment of the Court, with whom Hrones & Harwood, Boston, Mass., was on brief for petitioner.

Annette C. Benedetto, Asst. Atty. Gen., Crim. Bureau, with whom A. John Pappalardo, Deputy Atty. Gen., Chief, Crim. Bureau, and James M. Shannon, Atty. Gen., Boston, Mass., were on brief for appellee.

Before BOWNES, Circuit Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

BOWNES, Circuit Judge.

Following a jury trial, petitioner Normand Gagne, and two codefendants were convicted of armed robbery, armed assault with intent to murder, attempted murder, assault and battery on a police officer, and assault and battery by means of a dangerous weapon. The Massachusetts Appeals Court reversed the convictions on the basis of errors at trial and remanded for a new trial. *Commonwealth v. Gagnon*, 16 Mass.App. 110, 449 N.E.2d 686 (1983). The Massachusetts Supreme Judicial Court granted a request from the Commonwealth for further appellate review and subsequently affirmed the convictions. *Commonwealth v. Bourgeois*, 391 Mass. 869, 465 N.E.2d 1180 (1984). Gagne petitioned for a writ of habeas corpus in the United States District Court for the District of Massachusetts. After allowing Gagne to amend his petition, the district court denied the writ. This appeal followed.[1]

---

* Of the Second Circuit, sitting by designation.

1. Petitioner's counsel did not represent petitioner in any of the state court proceedings.

Gagne asserts that he was denied his constitutional right to a fair trial because the prosecutor improperly "vouched" for the credibility of a witness, Officer Petrick. Petitioner also points to other remarks made by the prosecutor during the trial, particularly to statements of personal opinion made by the prosecutor during his closing argument. Defense counsel objected only to the vouching for the credibility of Officer Petrick. Petitioner argues that in weighing the impact of the vouching statement, the court must examine the proceedings in their entirety, so that other comments, although unobjected to below, must be considered.

■ The Commonwealth contends here as it did below, that Gagne failed to exhaust his state remedies as required by 28 U.S.C. § 2254(b) and (c). The district court found that the improprieties petitioner alleged could not support his claim of a constitutional violation and did not address the exhaustion issue. We agree with respondent that Gagne did not meet his initial obligation of exhausting remedies available to him in the Commonwealth courts and find that no exception applies. Under the applicable law, we must affirm the dismissal on exhaustion principles.

In order for the exhaustion requirement to be met, the petitioner must have fairly presented the substance of his federal habeas claim to the state court before seeking federal review. *See Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277–78, 92 S.Ct. 509, 513–14, 30 L.Ed.2d 438 (1971)); *Dougan v. Ponte*, 727 F.2d 199, 200 (1st Cir. 1984). It is not enough that the same facts underly the claims. *See Anderson*, 459 U.S. at 6, 103 S.Ct. at 277; *Picard*, 404 U.S. at 276–77, 92 S.Ct. at 512–13. Rather, the legal theory in the state and federal courts must be the same. *See Dougan*, 727 F.2d at 201; *Williams v. Holbrook*, 691 F.2d 3, 9 (1st Cir.1982).

This does not mean that the petitioner must have expressed the theory in precisely the same terms. As we stated in *Dougan v. Ponte*, a petitioner may satisfy the

exhaustion requirement by any of the following methods: (1) citing a specific provision of the Constitution; (2) presenting the substance of a federal constitutional claim in such manner that it likely alerted the state court to the claim's federal nature; (3) reliance on federal constitutional precedents; and (4) claiming a particular right specifically guaranteed by the Constitution. 727 F.2d at 201. *See also Daye v. Attorney General of State of New York*, 696 F.2d 186, 192–93 (2d Cir.1982) (en banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

After examining the extracts from the state court briefs provided us by the parties, we find no reference to any specific provision of the Constitution or to any right specifically guaranteed by the Constitution. The portion of the briefs dealing with prosecutorial misconduct contained only one oblique reference to constitutional rights. In the issue caption, the defendant alleged that he had been denied his "rights to a fair trial and due process of the law." The only other arguable reference was a repetition of the words "fair trial" within the body of the argument. This does not meet the first or fourth *Dougan* requirement.

Petitioner also failed to suggest a constitutional claim by the use of federal precedent. Although he cited two federal cases, neither contains an analysis of constitutional law. In both cases, the court of appeals reviewed claims of a prosecutor's injection of personal opinion into argument pursuant to its supervisory authority over the district court. When a federal appellate court conducts supervisory review, constitutional rights need not be implicated. As the Court observed in *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974), "not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" (quoting *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941)). The first case cited by petitioner, *Patriarca v. United*

*States,* 402 F.2d 314 (1st Cir.1968), *cert. denied,* 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969), addressed the prosecutor's conduct as an *ethical* violation. *Id.* at 320–21. The second case, *United States v. Cotter,* 425 F.2d 450 (1st Cir.1970), relied upon *Patriarca.*

In determining whether Gagne presented the substance of his claim in a manner likely to alert the Commonwealth courts to its "federal nature," we are faced with a situation nearly identical to *Dougan v. Ponte,* 727 F.2d 199 (1st Cir.1984). In *Dougan,* the petitioner claimed that evidence had been improperly admitted and that the prosecutor had improperly disparaged "motorcycle gang[s]" and Dougan's association with them. We found that both of the claims fell "precisely within the category of alleged errors whose description does not in and of itself raise the red flag of constitutional breach." *Id.* at 201 (citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). A study of Dougan's state court brief disclosed but a single indication of a constitutional claim: issue captions included the label of "unfair trial." The discussion which followed contained no reference to constitutional provisions or rights or to any state or federal case which rested on a constitutional ground, nor did it provide the basis for a claim implicating a particular right. *Id.* "In short, the most meticulous search on the part of the state court would have turned up nothing suggesting that petitioner was making a federal due process argument." *Dougan,* 727 F.2d at 202.

Similarly here, Gagne's allegation of an unfair trial appeared only briefly in one caption and within the discussion that followed. Petitioner never set forth a constitutional frame of reference. Rather, he buttressed his claim of an unfair trial with a citation to the Massachusetts Supreme Judicial Court Rule 3:08, PF 13(b). This could only mean that the argument should be read as an appeal to Massachusetts standards for a fair trial, especially since " '[s]tate court briefs routinely characterize a variety of errors as a denial of a fair trial, conveying the thought that the error, simply as a matter of state law, warrants a new trial.' " *Dougan,* 727 F.2d at 201 (quoting *Kirksey v. Jones,* 673 F.2d 58, 60 (2d Cir.1982)).

The unexplained inclusion of the term "due process of the law" in Gagne's issue caption, while more than appeared in Dougan's brief, presented no perceptibly greater signal to the Commonwealth courts that federal constitutional claims were implicated. In *Dyer v. Ponte,* 749 F.2d 84 (1st Cir.1984), the petitioner made two references to his fourteenth amendment right to a fair trial in his main brief and repeatedly alleged due process violations in his reply brief. He neglected, however, to undertake any federal analysis. While the court did decide to address the constitutional claim, our review of the exhaustion issue prompted us to "question whether a petitioner who *only* cites 'book and verse' [on the federal constitution] has done enough to inform the state court of his federal constitutional claim." *Dyer,* 749 F.2d at 87 (emphasis in original). Gagne has fallen short even of the minimal citation which led the *Dyer* court to a reluctant review of the underlying claim. In light of the state court briefs in this case, we have no difficulty ruling that Gagne did not alert the Commonwealth courts to the federal nature of his claim. And although the state court need not have addressed or decided a petitioner's federal claim in order for the exhaustion requirement to be met, *see Kines v. Butterworth,* 669 F.2d 6, 12 (1st Cir. 1981), *cert. denied,* 456 U.S. 980, 102 S.Ct. 2250, 72 L.Ed.2d 856 (1982), we find additional support for our view that the Massachusetts courts were not alerted to the federal constitutional claims in the fact that the court opinions analyze the issue not from a constitutional standpoint but strictly on the basis of Massachusetts cases and federal cases grounded on the supervisory authority of appellate courts.

There are still further reasons for finding petitioner has failed to exhaust his state remedies. While the focus of Gagne's unfair trial allegation is the prosecutor's vouching comment, duly objected to at trial, he urges that in reviewing the impact of this statement, the court must

consider other remarks to which defense counsel never objected. The thrust of his argument is that since a claim of an unfair trial necessitates review of the comment in the context of the entire trial, *Donnelly v. DeChristoforo*, 416 U.S. at 639, 94 S.Ct. at 1869–70, these uncontested remarks must be weighed as well since they form part of the entire proceedings. This contention raises some problems.

First, the argument itself may be foreclosed because defendant did not object at trial. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), stands for the proposition that procedural default in the state court acts as an adequate and independent state ground for decision, precluding the granting of a federal habeas corpus petition. Failure to object at trial can provide the basis for invoking the *Wainwright* rule. *Wainwright*, 433 U.S. at 86, 97 S.Ct. at 2506; *Gardner v. Ponte*, 817 F.2d 183, 186 (1st Cir.1987); *McCown v. Callahan*, 726 F.2d 1, 3 (1st Cir.), *cert. denied*, 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 78 (1984).

But more important to our review of the exhaustion issue, it is not at all clear that Gagne presented such a constitutional claim to the Commonwealth courts, although the Massachusetts Appeals Court did consider the remarks in conducting a limited "miscarriage of justice" review authorized by Massachusetts law, *Gagnon*, 449 N.E.2d 686 at 690, and Gagne's brief to the Supreme Judicial Court did contain a similar "miscarriage" appeal. As this court indicated in *Domaingue v. Butterworth*, 641 F.2d 8, 12 (1st Cir.1981), if a petitioner "presents new legal theories or new factual allegations in federal court that transform his claim or cast it in a significantly different light," the claim is not exhausted. Gagne's extended argument can only be viewed as a significant transformation of his initial claim based only upon improper credibility vouching, leading again to the conclusion that he has failed to exhaust.

Moreover, even if we were to treat the habeas petition as setting forth two claims —one alleging that the vouching remark alone deprived petitioner of a fair trial, and the other that such remark, in light of the entire proceedings, violated his constitutional rights—and we were to find that he did exhaust his first claim but did not exhaust the second, petitioner's position would not be improved. The petition would then contain both exhausted and unexhausted claims and should be dismissed as "mixed." *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

■ A finding that petitioner has failed to exhaust his state remedies, however, does not end the inquiry. A court of appeals is not deprived of jurisdiction to consider the merits of an application for habeas corpus relief because petitioner has not met this requirement. *Granberry v. Greer*, —— U.S. ——, 107 S.Ct. 1671, 1673, 95 L.Ed.2d 119 (1987). The doctrine of exhaustion is based upon comity "which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" *Rose v. Lundy*, 455 U.S. at 518, 102 S.Ct. at 1203 (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)). Consequently, though "there is a strong presumption in favor of requiring the prisoner to pursue his available state remedies, his failure to do so is not an absolute bar to appellate consideration of his claims." *Granberry v. Greer*, 107 S.Ct. at 1674.

The habeas statute contains two exceptions to the requirement. A petitioner need not exhaust if there is an absence of available state corrective process or circumstances exist which render the process ineffective to protect his rights. 28 U.S.C. § 2254(b) (1982). The latter situation has been interpreted to mean that the corrective process must be "so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981). There is no suggestion that either of the conditions set forth in 28 U.S.C. § 2254(b) applies to Gagne's case.

Habeas review may also be appropriate despite nonexhaustion if the state fails to raise that defense in the district court and raises it for the first time on appeal. The Supreme Court considered this possibility in *Granberry v. Greer,* holding that the court of appeals was neither required to dismiss for nonexhaustion in the face of the state's failure to raise the issue below, nor to regard the failure as an absolute waiver. *Granberry,* 107 S.Ct. at 1674. Instead, the state's initial omission prompts a "fresh look" to determine whether comity and federalism would be better served by requiring additional state and district court proceedings or by addressing the merits immediately. *Id.* at 1675. The Court suggested that when the case involves an important unresolved factual question or issue of state law, return to the state courts is appropriate. *Id.* "On the other hand, if it is perfectly clear that the applicant does not raise even a colorable federal claim," or, after a full trial in the district court, a miscarriage is evident, the court of appeals may hold the defense waived and reach the merits. *Id.* at 1675–76.

We are not faced here with a possible waiver. From the outset, the Commonwealth defended on the ground that petitioner had failed to exhaust.

An argument that the principles of *Granberry* could provide the basis for an exception outside of the waiver context, so that exhaustion might be dispensed with whenever, for instance, there has been a clear miscarriage of justice, or the claim was not even colorable, seems to have been disposed of by *Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1. The Supreme Court in *Duckworth,* without any discussion of waiver, squarely rejected the Seventh Circuit's determination that petitioner was not required to exhaust because of the "clear violation" of his rights and the need for judicial economy. *Duckworth,* 454 U.S. at 2–3, 102 S.Ct. at 18–19. It appears unlikely that an appellate decision to review a barely colorable claim, as here, without any possible state waiver of exhaustion would fare any better.

Furthermore, when the state fails to raise the exhaustion issue until a petitioner appeals, there is an important purpose to be served by permitting immediate review in appropriate circumstances. The possibility that the issue will be considered waived discourages the state from making a tactical decision to piecemeal its defense, reserving an exhaustion argument for use only if it loses on the merits in the district court. *Granberry,* 107 S.Ct. at 1674. This sort of strategy could lead to prolonging the confinement of a petitioner whose claim is meritorious or requiring time-consuming and useless litigation of a clearly meritless claim. *Id.* Obviously, if the state vigorously argues nonexhaustion from the moment the petitioner brings his habeas claim, the goal outlined above has already been met.

Other situations may exist in which, even absent waiver, federal court action is proper despite lack of exhaustion. The Supreme Court suggested as much in *Granberry* by reiterating the view expressed in *Frisbie v. Collins,* 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952), that "special circumstances" can require "prompt federal intervention." But the matter remains open to interpretation, since the Court treated *Frisbie* as having presented a waiver question. *Granberry,* 107 S.Ct. at 1676.

While we do not decide here that no other circumstances would warrant immediate review, we find no factual support for an argument of "special circumstances" in petitioner's case. Nor did petitioner press any argument to this effect.

Although we are, under the applicable law, precluded from deciding the case on the merits, we are constrained to state that we agree with the district court that petitioner's federal constitutional rights were not implicated.

*Affirmed.*