**Christopher MARTENS,
Petitioner, Appellant,**

**v.**

**James SHANNON, Attorney General, et al., Respondents, Appellees.**

**No. 87–1694.**

United States Court of Appeals,
First Circuit.

Heard Dec. 9, 1987.

Decided Jan. 12, 1988.

Robert A. Stolzberg, Boston, Mass., for petitioner, appellant.

Robert M. Mendillo, Asst. Atty. Gen., Crim. Bureau, with whom James M. Shan-

---

non, Atty. Gen., Boston, Mass., was on brief, for respondents, appellees.

Before BREYER and SELYA, Circuit Judges, and LAFFITTE,* District Judge.

SELYA, Circuit Judge.

Christopher Martens, petitioner-appellant, was indicted by a Massachusetts grand jury in 1982 on two counts of armed robbery. Massachusetts subsequently lodged a detainer with the authorities in California (where appellant was in custody on other charges). In September 1983, Martens began serving a lengthy state sentence in California. He claims to have made a valid demand for a speedy disposition of the Massachusetts indictment in pursuance of the Interstate Agreement on Detainers Act (IAD), 18 U.S.C.App. § 1.[1] Yet, his Massachusetts trial was not expedited.

On July 5, 1984, petitioner filed a *pro se* motion to dismiss the Massachusetts indictment. He averred that he had sent an IAD notice to the appropriate California official in October 1983, that he had completed all the necessary forms, and that he had initiated follow-up inquiries in February 1984 and again in April 1984, all to no avail. Petitioner did not allege that any Massachusetts representative ever received (or knew about) his IAD speedy trial request. In July 1984, the Massachusetts court denied the motion.

Martens was returned to Massachusetts in April 1985. He was arraigned, *inter alia*, on the 1982 indictment. Shortly thereafter, petitioner, through counsel, moved that the state superior court reconsider its earlier denial of his motion to dismiss. And, a new motion to dismiss was filed—this time on the ground that the

Commonwealth had received actual notice of Martens's demand in July 1984 (through the medium of his *pro se* motion to dismiss), yet had failed to bring him to trial within 180 days thereafter. These motions were summarily rejected. Martens then went to trial and was convicted on both counts.

On direct appeal, petitioner claimed that one or the other of his motions to dismiss should have been granted. The Massachusetts Supreme Judicial Court (SJC) was not persuaded. It affirmed Martens's convictions, holding that he had failed properly to comply with the IAD's notice provisions. *Commonwealth v. Martens*, 398 Mass. 674, 500 N.E.2d 282 (1986).

Little daunted, Martens filed an application for habeas review in the United States District Court for the District of Massachusetts. 28 U.S.C. §§ 2241–54. He asserted three grounds, namely, (1) that given the strictures of the IAD, the indictment should have been struck down for the reasons set forth in his pretrial motions; (2) that he was impermissibly denied the assistance of counsel on his initial motion to dismiss; and (3) that he was wrongly refused an evidentiary hearing. The district court referred the petition to a United States magistrate for preliminary consideration. *See* Rule 10, 28 foll. § 2254; *see also* Rules for United States Magistrates (D.Mass.), Rule 3(a). In a report and recommendation dated May 27, 1987, the magistrate suggested that the requested relief be denied without further ado. Petitioner objected. The district court nevertheless accepted the recommendation and summarily dismissed the habeas case. *See* Rule 4, 28 foll. § 2254.

■ The petitioner applied for, and re-

---

* Of the District of Puerto Rico, sitting by designation.

1. This court has recently set forth an expository description of the mechanics of the IAD, to which we refer the reader with a penchant for detail. *See United States v. Currier*, 836 F.2d 11, 13–16 & nn. 2–4 (1st Cir.1987). In general terms, the IAD has pertinence where, as in Martens's case, a prisoner is serving a sentence in

one state but has charges pending against him in another state and the second state had placed a "hold" on his release. Article III of the IAD mandates that, once such a prisoner makes a proper demand therefor, the state which has lodged the detainer must bring him to trial within 180 days.

ceived, a certificate of probable cause [2] and thereupon prosecuted this appeal. We affirm the dismissal.

We need not linger long over this matter. Neither the second nor the third ground contained in Martens's habeas petition was ever tendered in an appropriate fashion to the state courts. The defect is a fatal one, for federal habeas oversight is not a freewheeling construct. It is dependent, among other things, upon all of the claims asserted in the petition having been exhausted in the state courts. *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Dougan v. Ponte*, 727 F.2d 199 (1st Cir.1984). As Justice O'Connor bluntly put it, the Court's "interpretation of §§ 2254(b), (c) provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Rose*, 455 U.S. at 520, 102 S.Ct. at 1204. Martens, having called the tune and chosen to ignore that "simple and clear instruction," must pay the piper.

▆▆▆ To be sure, petitioner argues that he made a passing reference or two in his SJC filings to the fact (a) that he was unrepresented by counsel for a long spell, and (b) that no evidence was taken on his dismissal motions. But, the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick. As we have recently had occasion to observe:

> In order for the exhaustion requirement to be met, the petitioner must have fairly presented the substance of his federal habeas claim to the state court before seeking federal review. *See Anderson v. Harless*, 459 U.S. 4, 6 [103 S.Ct. 276, 277, 74 L.Ed.2d 3] (1982) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277–78 [92 S.Ct. 509, 513–14, 30 L.Ed.2d 438] (1971)); *Dougan v. Ponte*, 727 F.2d 199, 200 (1st Cir.1984). It is not enough that the same facts underly [sic] the claims. *See Anderson*, 459 U.S. at 6 [103 S.Ct. at 277]; *Picard*, 404 U.S. at 276–77 [92 S.Ct. at 512–13]. Rather, the legal theory in the state and federal courts must be the same. *See Dougan*, 727 F.2d at 201; *Williams v. Holbrook*, 691 F.2d 3, 9 (1st Cir.1982).

*Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir.1987).

We have undertaken a meticulous search of the filings made with the SJC on Martens's behalf. We have unearthed nothing of any significance to suggest that appellant, in the state courts, was contending either (1) that his federal constitutional rights were abraded by the state's failure to furnish him with counsel at an earlier date, or (2) that the absence of an evidentiary hearing itself a comprised due process violation. In our judgment, the most eagle-eyed of observers would not have been able to identify any such claims as having been placed legitimately in issue in the state courts. The SJC, in short, was given no real opportunity to address either of these late-blooming contentions. Prior to the initiation of federal habeas proceedings, the essence of these claims was neither raised nor considered. And, there is not the slightest basis for presuming that the Commonwealth—which repeatedly claimed nonexhaustion, both in the district court and before us—has waived its rights in this regard. *See generally Granberry v. Greer*, —— U.S. ——, 107 S.Ct. 1671, 1673–74, 95 L.Ed.2d 119 (1987); *Gagne*, at 9–10.

At oral argument, petitioner attempted to confess and avoid, as it were. His attorney urged that it will be circuitous and

---

2. The district court did not explain, and we do not discern, the basis on which a finding of "probable cause" rested in this instance. Where, as here, the result seems cut-and-dried, and no fairly debatable questions of constitutional magnitude are presented, the district courts should be hesitant to certify probable cause. *See Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4, 103 S.Ct. 3383, 3394 & n. 4, 77 L.Ed.2d 1090 (1983). And when such a certificate is granted, it seems to us that the better practice would be for the district court to articulate its reasons. *Cf.* Fed.R.App.P. 22(b) (district judge who denies certificate of probable cause must "state the reasons why such a certificate should not issue").

wasteful to require Martens to comply with the exhaustion requirement. Yet, the choice is not ours: the Court made clear in *Rose* that it contemplated no less than a "rigorously enforced total exhaustion rule." 455 U.S. at 518. There is nothing in Martens's case which would warrant excepting him from the evenhanded application of such a prudential rule. Counsel simply jumped the gun in bringing to a federal habeas forum contentions not first screened by the state courts.[3] Circuitousness, we hasten to suggest, is a small price for achieving in full measure the important end to which the exhaustion doctrine is addressed: minimization of "friction between ... federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano,* 454 U.S. 1, 2, 102 S.Ct. 18, 18, 70 L.Ed.2d 1 (1981) (per curiam).

Because the Massachusetts courts have never been given, in the *Dougan* phrase (*Dougan,* 727 F.2d at 202), a "fair opportunity" to confront—let alone correct—two of the three alleged constitutional errors, petitioner's habeas application is a "mixed" one: exhausted as to the IAD claim, unexhausted as to the remaining grounds. Inasmuch as it is settled "that a district court must dismiss habeas petitions containing both unexhausted and exhausted claims," *Rose,* 455 U.S. at 522, 102 S.Ct. at 1205 (footnote omitted), we need go no further.[4] Martens's habeas application was properly rejected.

*The judgment of the district court is affirmed for failure to exhaust state remedies.*

---

**3.** There may be special "situations ... in which, even absent waiver, federal court action [by habeas review] is proper despite lack of exhaustion." *Gagne,* at 10. But, the record in this case is entirely barren of circumstances so extraordinary as to invoke such unusual remediation.

**4.** Because the district court had no jurisdiction to entertain a mixed petition such as this one, it would be supererogatory to rule upon the Commonwealth's contention that the sole "exhaust-

ed" ground in appellant's petition—the claim that the IAD was violated—is not of constitutional stature. We note in passing, however, that the law on the point appears to stand decided in this circuit. *See Fasano v. Hall,* 615 F.2d 555, 558 (1st Cir.) (claimed IAD violations "generally not cognizable in a habeas proceeding"), *cert. denied,* 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 86 (1980)).