COMMONWEALTH *vs.* PETER J. GANGEMI.

Barnstable.   March 6, 1985. — April 2, 1985.

Present: GRANT, ROSE, & FINE, JJ.

*Hunting.  Trespass.  Public Land.*

The judge who allowed the Commonwealth's motion to sever one of the
   counts of a criminal complaint charging a defendant with firearms and
   hunting violations was directed to file a statement of his reasons for
   concluding that severance was "in the best interests of justice"
   (Mass.R.Crim.P. 9[a] [3]) before trial of that count. [586]
Evidence at a criminal trial warranted the jury's concluding beyond a reason-
   able doubt that the defendant had consented, in violation of G. L. c. 131,
   § 82, to his dog's chasing a deer. [587]
Evidence that the defendant in a criminal case had trespassed and hunted on
   the Camp Edwards Military Reservation was sufficient to warrant a
   jury's finding that he had violated the provision of G. L. c. 131, § 59,
   prohibiting hunting on "any land owned or leased by the Common-
   wealth." [587-589]
A defendant charged with a firearms violation under G. L. c. 266, § 121, was
   entitled to a required finding of not guilty, where there was no evidence
   that he had remained on the land of another after having been requested
   to leave. [589]

COMPLAINT received and sworn to in the Barnstable Division
of the District Court Department on January 17, 1984.

On appeal to the jury session the case was tried before
*Richard P. Kelleher,* J.

*Robert M. Murphy* for the defendant.

*Douglas K. Sheff,* Legal Assistant to the District Attorney,
for the Commonwealth.

GRANT, J. The defendant has been convicted by a jury of
six on three of the four counts of a complaint drafted and sworn
to by a natural resources officer in the Barnstable District
Court. See G. L. c. 21, §§ 6-6E.

1. The first count charges the defendant with a violation of G. L. c. 131, § 4(15), inserted by St. 1968, c. 718. According to a stipulation which was filed in this court and approved by a single justice under Mass.R.A.P. 8(e), as appearing in 378 Mass. 934 (1979), the Commonwealth was not prepared to go forward on this count when the case was called for trial (some four months after the filing of the complaint) because the prosecutor lacked the necessary certification of the ban referred to in § 4(15). As this portion of the proceedings was not recorded, and as we have not been given a statement of the proceedings under Mass.R.A.P. 8(c), as appearing in 378 Mass. 933 (1979), we do not know why the prosecutor had failed to secure the certification. We do know from the stipulation that the judge, over the defendant's objection, allowed a motion by the Commonwealth to sever count 1 and denied the defendant's motion to dismiss that count. We were told at the argument that the count has not been tried and is pending.

The parties have argued the propriety of the judge's rulings in their briefs, apparently unmindful that both rulings are purely interlocutory and that neither is presently appealable under G. L. c. 278, § 28 or § 28E, as appearing in St. 1979, c. 344, §§ 44 and 45, respectively. Accordingly, we express no opinion on the propriety of either order. However, against the possibility that count 1 might be brought forward, we order now that that count is not to be tried unless or until the judge who allowed the motion to sever files a statement in writing setting out in detail the reasons why he thought a severance was "in the best interests of justice" within the meaning of Mass.R.Crim.P. 9(a)(3), 378 Mass. 859 (1979).

The following is a summary of the evidence most favorable to the Commonwealth which was introduced by it in the course of its direct case on counts 2 through 4. *Commonwealth* v. *Clark,* 378 Mass. 392, 403 (1979). On the day in question the defendant entered the Camp Edwards Military Reservation carrying a .44 magnum carbine and thirteen rounds of hollow point ammunition for it. He was accompanied by a coon dog which was on an eight-foot leash. When first observed by a natural resources officer, the defendant, the dog and the leash

were tangled up in the branches of a low scrub oak or bush. The officer identified himself as such and told the defendant to stand by for an inspection of his guns and ammunition. The defendant's response was to run some twenty-five or thirty yards away from the officer, at which point the defendant released the dog from its leash in an area in which there "are a great number of deer."

The officer heard the dog yelp and "looked toward the direction of the dog, and . . . observed a deer jump and break, and the dog was on the deer." The deer took off in one direction, with the dog in pursuit; they "[b]roke and ran." The defendant took off in a different direction, with the officer in pursuit. The defendant was captured and arrested by a second officer approximately three quarters of an hour later, and while still in the reservation. The defendant lied about whether he had a dog but admitted (after Miranda warnings) that he had no permission from the base commander to "hunt on [the] Camp Edwards Military Reservation." The foregoing events did not occur during the deer season.

2. Count 2 of the complaint charged that the defendant "[d]id possess and consent to such dog chasing and hunting deer in violation of Chapter 131, Sec. 82."[1] The question here is whether the defendant was entitled to a required finding of not guilty under Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). We have no hesitancy in concluding that on the foregoing evidence any rational jury (*Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 [1979]) would have been warranted in concluding beyond a reasonable doubt that the defendant had consented to his dog's chasing a deer.

3. Count 3 charged that the defendant "[d]id hunt and trespass on a military reservation without a permit issued by the authorities of such reservation in violation of Chapter 131,

---

[1] The first sentence of G. L. c. 131, § 82, as appearing in St. 1967, c. 802, § 1, reads: "A person owning, keeping or possessing a dog shall not allow, permit or consent to such dog chasing, hunting, molesting, attacking or killing a deer."

Sec. 59."[2] The principal argument here is that the defendant should have had a required finding because the Commonwealth failed to show that Camp Edwards is a "reservation" within the meaning of the phrase "reservation, park or common" appearing in the first sentence of § 59. The defendant has missed the thrust of this count; it alleges that the offence was committed on a "military reservation," not simply on a "reservation." We think it clear that the count was drawn under that part of § 59 which makes it an offence to hunt without permission on "any land owned or leased by the commonwealth." Except for the portion which has been leased to the United States and is known as Otis Air Force Base (see G. L. c. 33, § 114, inserted by St. 1954, c. 590, § 1; Rep. A.G., Pub. Doc. No. 12, at 287 [1966]) and the portion which has been transferred to the United States for use as a national cemetery (see St. 1976, c. 150), neither of which is involved in this case, all of the Camp Edwards Military Reservation is owned by the Commonwealth and administered by its Military Reservations Commission. See St. 1935, c. 196; St. 1936, cc. 320 and 344; St. 1938, c. 331; St. 1941, cc. 5 and 20.[3] The notion that the Commonwealth should have been required to produce some muniment of title was never broached with the trial judge and need not detain us.

The defendant's brief contains a bald assertion to the effect that the evidence was insufficient to warrant a finding that he had been "hunting" within the meaning of G. L. c. 131, § 59. No effort has been made to sift the nuances of the definition of

---

[2] The first sentence of G. L. c. 131, § 59, as appearing in St. 1967, c. 802, § 1, reads: "A person shall not hunt, or in any manner molest or destroy, any bird or mammal within the boundaries of any reservation, park or common, or any land owned or leased by the Commonwealth or any political subdivision thereof, or any land held in trust for public use; except that the authorities or persons having the control and charge of such reservations, parks, commons or other lands, may, with such limitations as they deem advisable, permit the hunting, within said boundaries during the applicable open season of any birds or mammals."

[3] This conclusion as to the source of the Commonwealth's title renders inapplicable the provisions of the first sentence of the second paragraph of G. L. c. 131, § 59, as amended by St. 1975, c. 706, § 253. Accordingly, the judge was correct in not referring to that sentence in his charge.

the words "to hunt" which is found in G. L. c. 131, § 1, as appearing in St. 1967, c. 802, § 1, and there is nothing that rises to the level of appellate argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Lolos* v. *Berlin,* 338 Mass. 10, 13-14 (1958).

4. Count 4 charged that the defendant "did without right enter upon the land of another with fire arms with intent to fire or discharge in violation of Chapter 266, Sec. 121."[4] The defendant should have had a required finding on this count for the reason (if no other) that there was no evidence that anyone ever asked the defendant to leave the reservation at any time prior to his arrest.

The judgments on counts 2 and 3 are affirmed; the judgment on count 4 is reversed, the verdict on that count is set aside, and a required finding of not guilty is to be entered for the defendant; any further proceedings on count 1 are to be in conformity with this opinion.

*So ordered.*

---

[4] General Laws c. 266, § 121, reads: "Whoever, without right, enters upon the land of another with firearms, with intent to fire or discharge them thereon, and, having been requested by the owner or occupant of such land or by his agent to leave such land, remains thereon, shall be punished . . . ."