**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WARREN S. BRONSON,
Petitioner-Appellant,

v.

No. 95-7752

FRANKLIN E. FREEMAN, JR.; JACK
TURLINGTON,
Respondents-Appellees.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(CA-95-22-5-BO)

Argued: September 24, 1996

Decided: December 18, 1996

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit
Judge, and HALLANAN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Hallanan wrote the opinion,
in which Judge Murnaghan and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Nora Henry Hargrove, Wilmington, North Carolina, for
Appellant. Clarence Joe Delforge, III, Assistant Attorney General,
NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North
Carolina, for Appellees. **ON BRIEF:** Michael F. Easley, Attorney

General, NORTH CAROLINA DEPARTMENT OF JUSTICE,
Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

HALLANAN, District Judge:

Petitioner-Appellant Warren Bronson appeals from the district
court's dismissal of his petition for federal habeas relief. The district
court dismissed Bronson's petition without prejudice on grounds of
non-exhaustion. Finding that Bronson failed to exhaust his state reme-
dies, we affirm.

I.

Bronson is a prisoner of the state of North Carolina, convicted after
a trial by jury of first degree murder in the Superior Court of Pender
County, North Carolina. The facts giving rise to Bronson's conviction
occurred on August 2, 1990. Bronson, his wife Sherry and their
twenty month old son lived in Pender County, North Carolina. Bron-
son was in the Marine Corps and Sherry, who had chronic health
problems, stayed home and cared for their son. The Bronsons were
having marital difficulties over health and financial problems. At
approximately 5:00 a.m. on August 2, 1990 the Pender County Sher-
iff's department received an emergency call from Bronson reporting
that someone had broken into his home and shot him and his wife.
Bronson gave conflicting stories about what happened that night. One
version was that intruders had shot Bronson and his wife. Another
was that he and Sherry had wrestled over the gun and she was shot,
and another was that he had shot her and then himself.

At a voir dire hearing held immediately before trial Bronson sub-
mitted to the trial judge for his approval a signed document authoriz-

2

ing defense counsel to tell the jury he unlawfully killed his wife but that he was guilty of second, rather than first, degree murder.

At trial Bronson testified that he and his wife had argued the night of the shooting and that at 3:00 a.m. Bronson awoke and let his dogs outside. He testified that at 5:00 a.m. he looked at his wife in bed, told her he loved her and shot her with a shotgun that was already loaded because of a recent break-in. Bronson testified that after the shooting, he tried to kill himself but the gun failed to fire and that as he lowered the gun, it misfired and hit his leg. Then Bronson called the police. At trial he testified he was so disoriented that he believed he was watching a stranger shoot his wife and that he could not reason or make or carry out plans. Bronson admitted killing his wife but denied planning to kill her. He testified he was still confused about what had happened.

On cross-examination, the prosecutor asked Bronson if he had spoken with his attorney and understood the meaning of premeditation and deliberation, asking if Bronson's version of the events omitted any acts supporting premeditation and deliberation, now that he understood those terms. The prosecutor also asked Bronson several times if any of his earlier statements had been made before he spoke with a lawyer. Bronson's expert witness, Dr. Henry Tonn, testified at trial that he had examined and tested Bronson and that it was his opinion that Bronson suffered from mental "disassociation" at the time of the shooting, making him feel separate from himself as though he was observing himself. It was Dr. Tonn's opinion that Bronson's condition substantially interfered with his mental faculties and ability to reason and the different versions of the night's events indicate that he was not thinking with a clear mind.

On July 19, 1991, in the Superior Court of Pender County, Bronson was convicted after trial by jury of first degree murder and sentenced to life imprisonment in Case 90 CRS 2628. Bronson appealed and on December 18, 1992 the Supreme Court of North Carolina found no error in Bronson's trial. State v. Bronson, 423 S.E.2d 772 (N.C. 1992). Bronson was represented at trial by William J. Morgan and on appeal and in this federal habeas action by Nora Henry Hargrove. On January 6, 1995 Bronson filed, through retained counsel, an application for federal habeas relief in the United States District Court for the

3

Eastern District of North Carolina. Judge Terrence W. Boyle dismissed without prejudice Bronson's petition on grounds of non-exhaustion on September 25, 1995, finding that the federal constitutional issues raised by Bronson in his petition were not addressed during the state appellate review and were not properly before the District Court. Bronson filed a notice of appeal to this court and a petition for certificate of probable cause on October 25, 1995. Judge Boyle issued a certificate of probable cause on November 2, 1995.

II.

A.

Bronson's federal habeas contentions allege improper jury instructions and improper prosecutorial questioning. Bronson maintains that he fairly presented these claims in his appeal to the Supreme Court of North Carolina. These contentions correspond to Arguments I and II in his brief to the Supreme Court of North Carolina. While the Argument section of his brief to the Supreme Court of North Carolina referred to the right to present a defense and assigned error in Bronson's Assignments of Error to the trial court's instructions regarding his expert witness as a deprivation of right to present a defense and due process guaranteed by the state and federal constitutions and assigned error in his Assignments of Error to improper prosecutorial questioning as a deprivation of his right to counsel and due process guaranteed by the state and federal constitutions, a review of Bronson's brief to the Supreme Court of North Carolina shows that Bronson relied upon state law in presenting these two claims to the Supreme Court of North Carolina. Furthermore, a reading of the published opinion by the Supreme Court of North Carolina also reveals that the Supreme Court of North Carolina did not discuss any federal constitutional arguments on these two claims. State v. Bronson, 423 S.E.2d 772, 776-79 (N.C. 1992).

B.

The function of the Record on Appeal under the North Carolina Rules of Appellate Procedure is to list the Assignments of Error and those documents and exhibits which the Court may review in order to adjudicate the appeal. "[R]eview is solely upon the record on

4

appeal and the verbatim transcript of proceedings . . . ." N.C.R. App. P. 9(a). "[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal . . . ." N.C.R. App. P. 10(a).

The function of a brief in an appeal is set forth in the North Carolina Rules of Appellate Procedure which state that:

> [t]he function of all briefs required or permitted by these rules is to define clearly the questions presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. Review is limited to questions so presented in the several briefs. Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned.

N.C.R. App. P. 28(a) (emphasis added).

A federal habeas petitioner must raise the same factual and legal claim in state court that he seeks to have reviewed in federal court in order to exhaust state remedies.

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan v. Henry, 115 S. Ct. 887, 888 (1995). Elsewhere, the Supreme Court has held that a federal habeas petitioner must raise the same factual and legal claims in state court that he seeks to present on federal habeas review. Anderson v. Harless , 459 U.S. 4 (1982); Pitchess v. Davis, 421 U.S. 482 (1975); Picard v. Connor, 404 U.S. 270 (1971). This court has stated that "the exhaustion requirement

5

demands that the petitioner `do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994), cert. denied , 115 S. Ct. 644 (1994) (quoting Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988)). Furthermore, federal habeas petitioners must raise their federal constitutional claims in state court in the manner prescribed by state procedural rules. Coleman v. Thompson, 501 U.S. 722 (1991); Murray v. Carrier, 477 U.S. 478 (1986); Smith v. Murray, 477 U.S. 527 (1986).

III.

A.

Bronson maintains that he adequately informed the Supreme Court of North Carolina that he was raising a federal constitutional claim with respect to the jury instruction issue. First, he points to the fact that in the state Record on Appeal he raised a federal constitutional claim in the Assignment of Error corresponding to this present contention. However, the function of the Record on Appeal is not to present legal argument but to list documents the court may review and to list all assignments of error in a manner analogous to the Joint Appendix in an appeal to this court which contains the necessary documents but not legal argument. Second, Bronson maintains that his statement that the trial court's instruction "depriv[ed] the defendant of his right to present a defense," contained in his state brief, sufficiently alerted the Supreme Court of North Carolina that he was raising claims under the Sixth and Fourteenth Amendments to the federal constitution. We find that Bronson's brief and ambiguous statement could just as easily have been construed as an allegation of state law violations because at no point did he make a federal constitutional argument to support his jury instruction contention and in his state brief Bronson sets forth his "Applicable Legal Principles" on the jury instruction issue, including only citations to state statutory and case law.

Therefore, Bronson's contention that he fairly presented his claim that the trial court's instruction on expert testimony violated his Sixth

6

and Fourteenth Amendment rights, even though he never mentioned the federal constitution or raised any federal argument on this issue in his brief to the Supreme Court of North Carolina, is without merit. Although Bronson raised federal constitutional arguments in his Assignments of Error on these two claims in the state Record on Appeal, he abandoned these federal constitutional arguments by failing to bring them forward and discuss them in his brief to the Supreme Court of North Carolina on these two issues. The District Court did not err when it found that Bronson's federal constitutional arguments concerning jury instructions were not addressed in the state court appellate review and were not appropriately before the District Court.

B.

Although he did not once mention the federal constitution or due process in his brief to the Supreme Court of North Carolina and only used the term "due process" in his Assignments of Error, Bronson also maintains that he adequately presented his claim of improper prosecutorial questioning about communications with his attorney, in violation of federal due process, to the Supreme Court of North Carolina.

A review of the Joint Appendix and the applicable law show that Bronson's second contention is without merit for the reasons stated above. Raising a federal constitutional argument in an Assignment of Error in the state Record on Appeal was insufficient to alert the Supreme Court of North Carolina of the federal constitutional claim. Therefore, Bronson waived this federal constitutional claim regarding improper prosecutorial questioning by failing to bring it forward and discuss it in his brief to the Supreme Court of North Carolina. The District Court did not err when it found that Bronson's federal constitutional arguments concerning improper prosecutorial questioning into attorney-client communication were not addressed in the state court appellate review and were not appropriately before the District Court.*

_____

*Bronson asks that, in the event that we find his first contention exhausted and his second non-exhausted, we treat his petition as "mixed" or allow him to excise his second argument. Because we find neither of Bronson's contentions exhausted, we do not reach the merits of Respondent-Appellees' arguments that treating his petition as "mixed" would be inappropriate on appellate review.

7

IV.

On June 21, 1996 the General Assembly of North Carolina ratified "An Act to Expedite the Postconviction Process" which imposes a mandatory procedural bar on all claims which could have been raised in a prior appeal or a post-appeal motion for appropriate relief. N.C.G.S. § 15A-1419(a)(3) and (b) (effective June 21, 1996). In a supplemental brief, Respondent-Appellees asked this court to apply the mandatory procedural bar contained in North Carolina's new statute instead of dismissing this action without prejudice on grounds of non-exhaustion. Because it has not yet been applied by the North Carolina courts and was not (and could not have been) raised before the district court, we decline to apply the mandatory bar and decline to dismiss this matter on grounds of procedural default instead of non-exhaustion. The state statute is brand new and the North Carolina courts have yet to apply it. If appropriate, North Carolina will apply its own procedural bar, if and when Bronson raises the same issues which he raises here in an appeal or post-appeal motion for appropriate relief before the state court.

Our review of the record and the district courts opinion discloses no error in the opinion of the district court. Accordingly, we affirm the opinion of the district court.

AFFIRMED

8