# United States Court of Appeals
## For the First Circuit

No. 06-2292

DAVID M. DUTIL,

Petitioner, Appellant,

v.

ROBERT MURPHY,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Torruella, Boudin and Howard,

Circuit Judges.

David B. Hirsch for appellant.
Annette C. Benedetto, Assistant Attorney General, with whom
Martha Coakley, Attorney General, was on brief for appellee.

December 11, 2008

**HOWARD**, **Circuit Judge**.  Petitioner David Dutil appeals from a decision of the district court dismissing his petition for a writ of habeas corpus.  Dutil, adjudged a sexually dangerous person ("SDP") under Massachusetts law, has long since completed the full term of his criminal sentence, and is now indefinitely confined to the Massachusetts Treatment Center under the Massachusetts SDP statute, Mass. Gen. Laws ch. 123A.[1]  His appeal challenges the constitutionality of his ongoing civil commitment, arguing that by failing to ensure regular and expeditious review of his sexual dangerousness, the Commonwealth's SDP statute deprives him of his substantive due process rights and is therefore facially invalid.  Because we find that the text of the statute, as interpreted by Massachusetts state courts, does not on its face violate the due process protections heretofore afforded SDPs subject to civil commitment, we affirm.

## I.  BACKGROUND

The relevant facts may be briefly summarized based on the findings of the Massachusetts Supreme Judicial Court ("SJC").  See

---

[1]The Massachusetts Legislature repealed portions of Chapter 123A in 1990, but in so doing specified that persons who were previously committed were to be "maintained at said treatment center" subject to the provisions of the original commitment order. Commonwealth v. Tate, 675 N.E.2d 772, 774 n.3 (Mass. 1997).  The Legislature enacted a revised version of the statute in 1999.  The portions of Chapter 123A at issue here, those dealing with the availability of a hearing to redetermine his sexual dangerousness, remain materially unchanged since Dutil's commitment. See Mass. Gen. Laws ch. 123A, § 9.

In re Dutil, 768 N.E.2d 1055 (Mass. 2002). The factual findings of the state court are presumed to be correct under 28 U.S.C. § 2254(e)(1). E.g., Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002) (citing Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001)).

In the late 1980s, Dutil was sentenced for six criminal charges of indecent assault and battery on a child under the age of fourteen years. In 1986, he was sentenced to two years of probation for the first two charges; two years later, he pled guilty to the other four charges and received four concurrent ten-year prison terms. At the latter sentencing, the judge also determined Dutil to be a sexually dangerous person pursuant to the then-current Massachusetts SDP statute and committed him to a treatment center indefinitely. Dutil's criminal sentence ended in 1997.

Pursuant to Mass. Gen. Laws ch. 123A, § 9, a provision allowing SDPs to argue that their sexual dangerousness has ended, Dutil filed petitions for discharge in 1996, 1997, and 1998.[2] A

_____

[2]Mass. Gen. Laws ch. 123A, § 9 reads in relevant part:

> Any person committed to the treatment center shall be entitled to file a petition for examination and discharge once in every twelve months. Such petition may be filed by either the committed person, his parents, spouse, issue, next of kin or any friend. The department of correction may file a petition at any time if it believes a person is no longer a sexually dangerous person. A copy of any petition filed under this subsection shall be sent within fourteen days after the filing thereof to the department of the attorney general and to the district attorney for the district where the original proceedings

-3-

judge denied the 1996 petition in August 1997 after a hearing, finding that Dutil remained an SDP. Dutil withdrew the 1997 petition before the scheduled hearing. Dutil's 1998 petition included a request for a jury trial, and in early February 2000, a jury found beyond a reasonable doubt that Dutil remained sexually dangerous.

While the third petition was pending, Dutil filed a state habeas corpus petition arguing, inter alia, that Massachusetts' SDP statute violated the requirements of Kansas v. Hendricks, 521 U.S. 346 (1997), by failing to require annual review of commitments. The Massachusetts Superior Court denied the habeas petition, and in 2002, the SJC affirmed the Superior Court's denial. In re Dutil, 768 N.E.2d at 1059. Neither court appears to have directly addressed Dutil's claim that he is entitled to annual review as a matter of federal due process.

---

were commenced. Said petition shall be filed in the district of the superior court department in which said person was committed. The petitioner shall have a right to a speedy hearing on a date set by the administrative justice of the superior court department. Upon the motion of the person or upon its own motion, the court shall appoint counsel for the person. The hearing may be held in any court or any place designated for such purpose by the administrative justice of the superior court department. In any hearing held pursuant to the provisions of this section, either the petitioner or the commonwealth may demand that the issue be tried by a jury. If a jury trial is demanded, the matter shall proceed according to the practice of trial in civil cases in the superior court.

In 2003, Dutil filed the instant federal habeas petition pursuant to 28 U.S.C. § 2254. The memorandum filed in support of his petition again alleged, inter alia, that he was entitled to annual review under Hendricks. A magistrate judge's report and recommendation found Dutil's argument without merit, concluding in a footnote that the statute's provision for "annual retrial through the . . . filing [of] a petition" comports with due process.[3] The district court adopted the magistrate's report and dismissed the petition without commenting on this footnote.

Dutil subsequently filed an Application for a Certificate of Appealability with the district court requesting permission to appeal on five distinct grounds. After citing In re Trimmer, 378 N.E.2d 59, 60 (Mass. 1978), for the proposition that the Massachusetts SDP statute "clearly does not set an express time limitation within which the court must hold a reexamination hearing," and after speculating that "it might plausibly be thought" that SDPs are entitled to "something more in the nature of a speedy trial rather than simply the right to file a (non-duplicative) petition on the anniversary of a civil commitment,"

---

[3]The relevant passage of the footnote reads, "The failure to provide an automatic annual retrial and, instead, only providing an annual retrial through the relatively simple and effective expediency of filing a petition does not violate due process." This passage may not squarely address Dutil's current due process challenge: as certified by the district court, the issue on appeal is Dutil's claim that the statute fails to ensure a timely hearing on a petition.

the district court granted the certificate as to one issue: whether due process is denied by the statute's failure to provide an express outward time limit within which the responsible court must hold a reexamination hearing when requested by a person civilly committed as an SDP.[4]  Massachusetts argues that Dutil failed to exhaust this claim in state court, and that in any event the statute comports with due process requirements.

## II.  EXHAUSTION OF STATE REMEDIES

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thus giving the state the first 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"  Josselyn v. Dennehy, 475 F.3d 1, 2-3 (1st Cir. 2007) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)); see also id.

---

[4]In so doing, the district court also noted, in a footnote, that "there is no particular magic in the phrase 'annual review,'" and he indicated his intention to frame the issue for appeal to include a challenge to the "indefinite delay of such reviews."

We further note that the issue as framed by the district court also excludes Dutil's argument, urged in his appellate briefs, that the requirement of filing a petition to receive a redetermination hearing is itself a violation of substantive due process.  Dutil previously advanced this argument in front of the district court as an equal protection challenge, to no avail.  He again advanced this argument, still as an equal protection challenge, in his Application for an Expanded Certificate of Appealability and in his Motion to Reconsider that decision, but we denied both motions.  Therefore, the question of whether the petition requirement itself is a violation of either substantive due process or of equal protection is not properly before us on appeal, and we decline to reach it.

at 3 ("Where, as here, a state's highest court offers discretionary review, a petitioner must present that court with the opportunity to review the federal claim to have exhausted available state remedies." (citing Baldwin v. Reese, 541 U.S. 27, 29 (2004))). Appellee argues that Dutil has failed to meet this exhaustion requirement, taking the position that the SJC was never fairly presented with the question of whether the Massachusetts SDP statute violates the Due Process Clause by failing to set an express time limit within which the court must hold a reexamination hearing. We disagree.

## A.  Standards

The exhaustion requirement, while at times technical and arcane, is straightforward in this context. A claim for habeas corpus relief has been exhausted where the claim has been "fairly presented" to the state courts. Id. (quoting Baldwin, 541 U.S. at 29) (internal quotation marks omitted). Fair presentation means that the petitioner "must show that he tendered his federal claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000)). This does not mean, however, that the pleadings in the state and federal courts must be identical, but only that "the legal theory [articulated] in the state and federal courts must be the same."

Id. (quoting Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987)) (alteration in original, internal quotation marks omitted).

We have previously held that a habeas petitioner fairly presents a claim by doing any of the following: "(1) citing a provision of the federal constitution; (2) presenting a federal constitutional claim in a manner that fairly alerts the state court to the federal nature of the claim; (3) citing federal constitutional precedents; or (4) claiming violation of a right specifically protected in the federal constitution." Id. (citing Gagne, 835 F.2d at 7).

Finally, as a general rule, we are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects. Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000)).

## B.  Analysis

While we agree with the appellee that the precise issue before us as framed by the district court was not clearly presented to the SJC, we think that Dutil's due process arguments were sufficiently presented to that court for exhaustion purposes.

-8-

Dutil's state habeas petition, which he filed pro se, specifically identified "substantive due process" as a ground for his complaint, and it made the claim that "he is being confined absent a finding or requirement of mental illness and dangerousness." This broad statement was then sharpened in his brief to the SJC, again filed pro se. In that brief, under a heading on the first page reading, "ON ITS FACE, G.L. c 123A VIOLATES . . . THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION," Dutil wrote, "Chapter 123A is not sufficiently narrowly tailored to survive scrutiny, for the following reasons . . . (2) the statute fails to require judicial review annually in order to determine whether the involuntarily confined individual requires further confinement." Later, in a section entitled "THE STATUTE FAILS TO REQUIRE JUDICIAL REVIEW ANNUALLY IN ORDER TO DETERMINE WHETHER THE INVOLUNTAIRLLY [sic] COMMITTED INDIVIDUAL REQUIRES FURTHER CONFINEMENT," Dutil quoted Hendricks as support for his contention that "[w]ithout annual judicial review, there is no assurance the '[Commonwealth] does not intend an individual committed under the Act to remain confined any longer than he suffers from the mental abnormality rendering him dangerous'" (second alteration in original). Dutil concluded this section with a short paragraph that included the sentence, "Dutil's inability to receive annual judicial review is a serious violation of substantive due process."

Dutil's state habeas petition is explicit in its invocation of due process and broad enough to encompass a challenge to the statute's alleged failure to provide for a timely reexamination hearing. The brief is overt in its reference to the federal due process clause, it cites Hendricks as an arguably on-point federal constitutional precedent, and, in both the introduction and in the later argument, it sufficiently states the relevant legal theory upon which Dutil proceeds. Moreover, while the details of Dutil's legal argument have evolved slightly since the filing of his pro se state habeas petition, having transformed from a request for annual judicial review to a request for periodic reexamination, the legal theory on which Dutil proceeds -- that the failure to provide timely reexamination violates the federal due process clause as interpreted in Hendricks -- has remained the same. That the SJC decided not to address this theory specifically in its denial of Dutil's state court habeas appeal is beside the point; the argument was fairly presented to that court, and we therefore find Dutil has satisfied the exhaustion requirement for his federal habeas petition.[5]

---

[5]We also note that the magistrate judge implied that Dutil's due process claim was fairly presented when she decided the claim on its merits, and the district court adopted that finding both explicitly and implicitly in its order granting Dutil's Certificate of Appealability.

### III.   CONSTITUTIONALITY OF THE STATUTE

The merits of Dutil's federal habeas corpus claim are another matter entirely.  As explained below, Dutil's argument that the Massachusetts SDP statute is invalid on its face due to its alleged failure to provide for an express outward time limit for reviews of his sexual dangerousness is unpersuasive.   In particular, Dutil extrapolates too freely from the two cases upon which he chiefly relies: Hendricks and Petition of Lund, 617 N.E.2d 1013 (Mass. App. Ct. 1993).  Fairly read, Lund does not authorize the thirty month delay that Dutil reads into the challenged statute, and Hendricks does not impose a deadline for redetermination hearings that is more exacting than the Massachusetts statute.

### A.  Standards

Because the SJC did not decide Dutil's substantive due process claim, our review is de novo. Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (citing DiBenedetto v. Hall, 272 F.3d 1, 6-7 & n.1 (1st Cir. 2001); Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001)).

A federal habeas court has jurisdiction over any claim that a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3), 2254(a).  A violation of substantive due process is found when the government's conduct is so "egregiously unacceptable, outrageous,

or conscience-shocking" that "the constitutional line has been crossed." Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990) (citations omitted) (declining to narrow the "wide . . . variety of labels" used to describe the standard for finding violations of substantive due process).

To mount a successful facial challenge to a statute, the challenger "must establish that no set of circumstances exists under which the Act would be valid. The fact that [an Act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid . . . ." United States v. Salerno, 481 U.S. 739, 745 (1987); see also Cook v. Gates, 528 F.3d 42, 56 (1st Cir. 2008); Comfort v. Lynn Sch. Comm., 418 F.3d 1, 12 (1st Cir. 2005) (en banc), abrogated on other grounds, Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, ___ U.S. ___, 127 S. Ct. 2738 (2007).

## B. Massachusetts Courts' Interpretation of the SDP Statute

The essence of Dutil's complaint is that, while the Massachusetts SDP statute nominally requires a "speedy hearing" on an SDP's petition for release, it has been interpreted by the Massachusetts courts to allow for unconstitutional delays. For support, he points to Lund, in which the Appeals Court of Massachusetts held that an SDP was not denied his right to a speedy hearing when he received a hearing more than thirty months after filing his petition for release. 617 N.E.2d at 1014-15. Dutil

-12-

argues that this state court decision represents a binding interpretation of the "speedy hearing" language. See Royal v. Superior Court, 531 F.2d 1084, 1088 n.14 (1st Cir. 1976) (citing Pollard v. Dwight, 8 U.S. (4 Cranch) 421, 429 (1808)); see also Chicago, Milwaukee, & St. Paul Ry. Co. v. Risty, 276 U.S. 567, 570 (1928). It is this interpretation that gives rise to Dutil's claim that the statute allows for unconstitutional delay.

A closer reading of Lund, however, reveals that the case does not stand for so broad a proposition as Dutil suggests. While it is true that the petitioner in Lund waited more than thirty months for a hearing on his § 9 petition, the state appellate court took pains to explain that the delay was largely of the petitioner's own making:

> Although [the petitioner] was appointed counsel on August 4, 1989, no complaint or other action on the petition was taken until March 19, 1991. There is nothing in the record before us which shows that the attorney general or the district attorney were even sent a copy of the petition under § 9, and, therefore, that the Commonwealth was aware of it prior to the motion seeking an immediate discharge.

617 N.E.2d at 1014-15. After adjusting for the petitioner's dilatory prosecution of his petition, the Lund court made clear its opinion that the actual delay not attributable to the petitioner was seven months, not thirty. Id. at 1015.

In light of the Lund court's explicit discussion of the exceptional circumstance of a represented petitioner's lengthy

-13-

delay, Dutil's reliance on Lund for the proposition that the Massachusetts state courts have interpreted the SDP "speedy hearing" language to allow for a thirty month delay is unavailing. The most we can fairly infer from Lund is that the Massachusetts courts have allowed something closer to a seven month delay under circumstances where the state attempts an earlier hearing, as it did in Lund. Id. But what delay, precisely, Massachusetts would allow under its SDP statute is speculation in which we need not, and explicitly do not, engage: it is enough to ascertain that neither Lund nor any other Massachusetts case of which we are aware interprets the "speedy hearing" language to encompass any delay approaching the thirty months that Dutil protests.

## C. Substantive Due Process Protections for SDPs Under Hendricks

Bearing in mind this less-rigid understanding of the Massachusetts SDP statute and state court interpretations thereof, we turn to the question of whether Hendricks requires a finding of facial invalidity. In Hendricks, the Supreme Court held constitutional an SDP statute that, unlike the Massachusetts statute at issue in this case, provided for automatic annual judicial redetermination of sexual dangerousness. Dutil relies on Hendricks for the proposition that SDPs have a right to more expeditious hearings to redetermine their sexual dangerousness than they are currently afforded, and he argues that the Massachusetts

-14-

SDP statute must be invalidated as a matter of substantive due process. We disagree.

To support his reading of <u>Hendricks</u>, Dutil adverts to language in that case discussing Kansas' then-current SDP statute, which provided for automatic annual judicial redetermination of sexual dangerousness. Specifically, the Supreme Court wrote:

> [C]ommitment under the Act is only potentially indefinite. The maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding is one year. If Kansas seeks to continue the detention beyond that year, a court must once again determine beyond a reasonable doubt that the detainee satisfies the same standards as required for the initial confinement. This requirement . . . demonstrates that Kansas does not intend an individual committed pursuant to the Act to remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness.

521 U.S. at 364. This passage certainly can be read to articulate a right not to be confined past the point of dangerousness.

<u>Hendricks</u> does not, however, establish that a statute's failure to provide an unambiguous timeline for a redetermination of an SDP's sexual dangerousness renders the statute unconstitutional. This is so for at least two reasons. First, the explicit language of <u>Hendricks</u> does not support the proposition Dutil advances. The passage quoted above does not specify how often the state must reassess an SDP's dangerousness. Rather, it indicates that an SDP statute providing for automatic annual judicial redetermination can be constitutionally acceptable. Additionally, <u>Hendricks</u> analyzes

-15-

Kansas' SDP statute in a context meaningfully different from this case. The quoted passage from <u>Hendricks</u> supported the Court's conclusions that, for purposes of the double jeopardy and <u>ex post facto</u> clauses of the Constitution, the State of Kansas had established civil, not criminal, proceedings, and that incarceration under that act was not punitive. <u>See</u> <u>id.</u> at 360-69; <u>accord</u> <u>Seling</u> v. <u>Young</u>, 531 U.S. 250, 261 (2001) (discussing <u>Hendricks</u>). The Court thus focused on Kansas' redetermination provision as evidence of the state's non-punitive intent, not as a necessary element for an SDP statute to pass muster under the due process clause.[6]

Moreover, even assuming, <u>arguendo</u>, that <u>Hendricks</u> did announce a substantive due process right to periodic redetermination hearings, Dutil has failed to show that "no set of circumstances exists under which the ['speedy trial' language of the Massachusetts SDP statute] would be valid." <u>Salerno</u>, 481 U.S. at 745. Despite the obvious ambiguity in the phrase "speedy trial," those words permit interpretations that would be consistent with even an exacting due process requirement for redetermination hearings.

---

[6]In fact, the Supreme Court in <u>Hendricks</u> did not even address the issue of redetermination in its discussion of whether Kansas' SDP statute violated the due process clause. 521 U.S. at 356-60. That discussion instead focused exclusively on whether the statute required sufficient proof of dangerousness plus "some additional factor," <u>id.</u> at 358-59, and whether such proof had been made as to Hendricks himself, <u>id.</u> at 360.

## IV.  CONCLUSION

In assessing the Massachusetts statute for facial validity, we are therefore left with a statutory guarantee of a "speedy hearing"; a state court interpretation that sanctions a thirty month delay where twenty-three of those months are the result of the exceptional circumstance of dilatory prosecution by a represented petitioner; and a Supreme Court case that, in a different constitutional context, upholds an SDP statute providing for automatic annual judicial review but is silent as to what redetermination procedures are necessary for purposes of due process.  This authority does not support a collateral facial challenge to the state statute:  in light of the statute's "speedy hearing" provision and judicial interpretations thereof, it is not apparent that "no set of circumstances exists under which the Act would be valid," Salerno, 481 U.S. at 745, nor that the statute is so "outrageous" as to constitute a violation of substantive due process, see Amsden, 904 F.2d at 754.  Should some aspect of the legal background change -- the statute is revised, the state courts further interpret the phrase "speedy hearing," or a relevant constitutional precedent intervenes -- perhaps a facial challenge will lie.  But the text of the statute does not now on its face

violate the due process protections heretofore afforded SDPs subject to civil commitment.[7]

**Affirmed.**

_____

[7]It bears mention that, if any person incarcerated under the Massachusetts SDP statute is truly aggrieved by the state's failure to hear a petition for release, that person is not without recourse. For instance, the aggrieved person may be able to bring an action in the nature of mandamus to force a speedy hearing. See Mass. Gen. Laws ch. 249, § 5. Alternatively, a petitioner who suffers a significant delay in receiving a hearing may have an as-applied due process challenge to the statute, as such a delay could conceivably stress the petitioner's right to avoid incarceration past the point of his or her dangerousness. We emphasize, however, that Dutil's case does not present this scenario: according to the record, Dutil does not have a petition for release pending, nor has he at any point since February 2000. Moreover, and as explained above, Dutil's prior petitions all appear to have been handled appropriately. His first petition was heard in a timely manner, and his second was withdrawn. While his third petition was not heard until sometime in the second year after its filing, it contained a request for a jury finding and ultimately resulted in a jury trial. We cannot conclude from the record -- nor has Dutil argued -- that any delay in hearing any of Dutil's three prior petitions violated his due process rights.