# United States Court of Appeals
## For the First Circuit

No. 08-1290

MELISSA J. POIRIER,

Plaintiff, Appellant,

v.

MASSACHUSETTS DEPARTMENT OF CORRECTION AND
KATHLEEN M. DENNEHY,
INDIVIDUALLY AND IN HER CAPACITY AS COMMISSIONER OF THE
MASSACHUSETTS DEPARTMENT OF CORRECTION,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Selya and Stahl, Circuit Judges.

Lori A. Jodoin with whom Harvey A. Schwartz and Rodgers, Powers & Schwartz, LLP, were on brief for appellant.
Sarah M. Joss, Assistant Attorney General, with whom Martha Coakley, Attorney General, was on brief for appellee.

February 27, 2009

**STAHL**, <u>Circuit Judge</u>.    Plaintiff-Appellant Melissa Poirier brought a civil rights claim under 42 U.S.C. § 1983 against the Massachusetts Department of Corrections (DOC) and Kathleen Dennehy, its Commissioner.[1]   Poirier, a former DOC prison guard, claimed that her constitutional right to intimate association was violated when she was fired for conducting a romantic relationship with a former inmate, in violation of department rules.    The district court dismissed the action for failure to state a claim under Rule 12(b)(6), concluding that the DOC's actions survived rational basis review.   Poirier appeals the dismissal, arguing that her romantic relationship constitutes a fundamental liberty interest that should receive strict scrutiny protection.    After careful review, we affirm.

We review de novo a dismissal by the district court for failure to state a claim, drawing all reasonable inferences in favor of Poirier, the non-moving party.  <u>See</u> <u>Redondo-Borges</u> v. <u>U.S. Dept. of Housing & Urban Dev.</u>, 421 F.3d 1, 5 (1st Cir. 2005).

Melissa Poirier was employed for fifteen years as a correction officer with the Massachusetts Department of Correction. She received positive performance evaluations over the course of her career.

---

[1]We take judicial notice that Dennehy is no longer the Commissioner of the DOC.

Rule 8(c) of the "Rules and Regulations Governing All Employees of the Massachusetts Department of Corrections" states that:

> You must not associate with, accompany, correspond or consort with any inmate or former inmate except for a chance meeting without specific approval of your Superintendent, DOC Department Head or Commission of Correction. Your relations with inmates, their relatives or friends shall be such that you would willingly have them known to employees authorized to make inquiries. Conversations with inmates' visitors shall be limited only to that which is necessary to fulfill your official duties.

In 2000 and 2001, the DOC investigated allegations that Poirier (1) maintained an inappropriate relationship with a current inmate; (2) delivered contraband to an inmate; and (3) communicated with a relative of an inmate. After conducting an investigation and hearing, the DOC found no evidence to support the first two charges, but sustained the third charge.[2]

In April 2004, Poirier notified her superiors that she would be in social contact with a former inmate, Dennis Novicki, who, according to the record, had been a figure in the prior investigation.[3] The DOC did not tell her to cease the association. Poirier and Novicki then "developed a deep attachment and commitment" to each other, and in July 2004, Poirier requested

_____

[2]As to the third charge, the DOC did not impose a sanction for this violation and allowed Poirier to maintain the friendship.

[3]The record is unclear as to what precise role Novicki played in the prior investigation.

permission from Commissioner Dennehy for Novicki to move in with her. In response, the DOC reopened the prior investigation and placed Poirier on leave pending review. On September 23, 2004, Dennehy denied Poirier's request for Novicki to reside with her, but did not order her to cease personal contact with the former inmate. On August 11, 2005, the DOC terminated Poirier's employment for having unauthorized contact with Novicki.

The district court granted the defendants' motion to dismiss, holding that (1) the DOC is immune from suit under the Eleventh Amendment; (2) Dennehy, in her personal capacity, enjoys qualified immunity as to damages; and (3) enforcement of the DOC rule by Dennehy did not violate Poirier's constitutional right to freedom of association because, under rational basis review, the rule is a rational means of promoting the legitimate government interest in prison security. Poirier now appeals from those rulings.

Poirier claims that Dennehy and the DOC violated her right to substantive due process, specifically the right to intimate association, which is guaranteed as against the states by the personal liberty protection of the Fourteenth Amendment. See Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 545 (1987) ("[T]he freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights."); Roberts v. U.S.

-4-

Jaycees, 468 U.S. 609, 617-18 (1984) ("[T]he court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme.").

The Supreme Court has identified several intimate associations that constitute fundamental rights and receive strict scrutiny review, including those that "attend the creation and sustenance of a family -- marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." Roberts, 468 U.S. at 619 (internal citations omitted). Beyond this list of bright-line fundamental rights, the Court has explained that human relationships are arrayed on a spectrum "from the most intimate to the most attenuated of personal attachments." Id. at 620. The Court in Roberts offered two guideposts for identifying the location of a relationship on this spectrum. First, the Court noted that relevant factors for consideration include "size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent." Id. Second, the Court noted that relationships that receive such constitutional protection are those that involve "personal bonds" that have "played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and

-5-

beliefs; they thereby foster diversity and act as critical buffers between the individual and the power of the State." Id. at 618-19.

The Roberts analysis, therefore, "unavoidably entails a careful assessment" by the court of where on the spectrum the relationship in question falls. Id. at 620. Poirier's claim encounters its first obstacle here. Poirier has failed to present this court with a sufficiently precise definition of the type of relationship that she believes is at stake in this case. Without such a definition, it is difficult for this court to carry out the required "careful assessment" of her claim. In both her briefing and her oral argument, Poirier offered numerous different versions of the type of relationship she believed was at issue, from "the right of a woman to love another private citizen" to "a monogamous committed romantic and domestic relationship" to a relationship of "deep commitment and future intentions." Poirier, as the plaintiff, has the responsibility to identify the right she seeks to vindicate.

That said, even under the most charitable reading of her ill-defined claim, Poirier faces a second problem. If we assume that the right she seeks to vindicate is that of cohabitation between unmarried adults, her claim nonetheless fails. The threshold question in this case is what level of scrutiny should be applied to the type of intimate association Poirier seeks to protect. The unmarried cohabitation of adults does not fall under

any of the Supreme Court's bright-line categories for fundamental rights in this area, see Roberts, 468 U.S. at 619, and we decline to expand upon that list to include the type of relationship alleged here, particularly in a case where the definition of the relationship is so imprecise. Therefore, strict scrutiny is not the appropriate measure of review.

Second, we need not decide whether rational basis review[4] or intermediate scrutiny[5] is appropriate in this case, because Poirier's claim would fail under either scenario. This outcome turns on the fact that we afford significant deference to prison administrators in regard to prison security measures. See Bull v. Wolfish, 441 U.S. 520, 548 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and

---

[4]"A law survives rational basis review so long as the law is rationally related to a legitimate governmental interest." Cook v. Gates, 528 F.3d 42, 55 (1st Cir. 2008) (citing Nordlinger v. Hahn, 505 U.S. 1, 11-12 (1992)). "Rational basis review does not permit consideration of the strength of the individual's interest or the extent of the intrusion on that interest caused by the law; the focus is entirely on the rationality of the state's reason for enacting the law." Id. (citing Heller v. Doe, 509 U.S. 312, 324 (1993)).

[5]This court's recent decision in Cook v. Gates concluded that the Supreme Court's decision in Lawrence v. Texas, 539 U.S. 558 (2003), requires courts to review claims involving the "liberty interest for adults to engage in private, consensual sexual intimacy" under a "balancing of constitutional interests that defies either the strict scrutiny or rational basis label." Cook, 528 F.3d at 52. Cook explained that the intermediate scrutiny test in Lawrence weighed "the strength of the state's asserted interest in prohibiting immoral conduct against the degree of intrusion into the petitioners' private sexual life caused by the statute." Id. at 56.

execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); United States v. Conley, 531 F.3d 56, 59 (1st Cir. 2008) ("We give great deference to a prison administrator's determination that prison safety is at risk."). The prospect of a guard-prisoner or guard-former prisoner relationship poses a clear and obvious threat to the maintenance of prison order and security. Contemporary news stories remind us that prison rules barring fraternization between prison staff and prisoners are eminently reasonable. See "Prison escape foiled, DA says," The Boston Globe, November 26, 2008, at 1 ("A nurse was charged yesterday with trying to help one of the state's most dangerous inmates escape from the prison at Walpole by smuggling him saw blades and a handcuff key."). Whether we employ rational basis review or intermediate scrutiny, the state's interest in preserving prison security is certainly reasonably advanced by prohibiting guard-prisoner or guard-former prisoner relationships; further, the state's interest in prison security outweighs the degree of intrusion into Poirier's private life imposed by the anti-fraternization rule. We therefore affirm the district court's dismissal of Poirier's complaint.

Two other issues require our brief attention. First, we affirm the district court's dismissal of Poirier's suit against the DOC on sovereign immunity grounds. States and their agencies are

entitled to sovereign immunity "regardless of the relief sought." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985). Poirier's argument that she only seeks prospective injunctive relief against the DOC is therefore unavailing.[6]

Second, we also affirm the district court's dismissal of Poirier's claim against Commissioner Dennehy for damages under § 1983. Even if we had concluded that Poirier had stated a claim for violation of her right to intimate association, she would not be entitled to seek damages against Dennehy in her personal capacity because such a right was not "clearly established" at the time of the purported violation. See, e.g., Santana v. Calderon, 342 F.3d 18, 30-31 (1st Cir. 2003).

For the foregoing reasons, we **affirm** the district court's decision in all respects.

_____

[6]As the district court correctly explained in its opinion, Poirier has confused the basic concept underlying Ex parte Young, 209 U.S. 123 (1908), and its progeny. A plaintiff may seek prospective injunctive relief against a state official, but may not obtain such relief against a state or its agency because of the sovereign immunity bar of the Eleventh Amendment. See, e.g., Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 114 n.1 (1st Cir. 2003) ("Under Ex parte Young the defendant state officers were proper defendants for prospective injunctive relief, but the Commonwealth or the Department qua Department were not.") (internal citation omitted).