**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 08-1095

DAVID A. JOSSELYN, ET AL.,

Plaintiffs, Appellants,

_____

WILLIAM M. TYREE, ET AL.,

Plaintiffs,

v.

KATHLEEN DENNEHY, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before
Lynch, Chief Judge,
Torruella and Boudin, Circuit Judges.

David A. Josselyn with Prince Moses, Kevin King, Gary Emerson, Jeffrey Doucette, Henry LaPlante, Jose Sime, Christopher Wolinski, Nicholas R. Boccio, James Ware, and Kevin Galford on brief pro se.
Kevin A. Anahory, Legal Division, Department of Correction, and Nancy Ankers White, Special Assistant Attorney General, on brief for appellees.

June 9, 2009

**Per Curiam.** Eleven pro se inmates appeal from the district court's rejection of their challenge to a state regulation banning inmates' receipt of publications that are "sexually explicit" or feature "nudity," 103 C.M.R. § 481.15(3)(b), and to a policy banning the display of those publications or other "semi-nude, scantily clad, and/or sexually suggestive material" in inmates' cells, 103 DOC 400.03(2)(c)(1) & (2). For the reasons given by the district court, Moses v. Dennehy, 523 F. Supp. 2d 57 (D. Mass. 2007), supplemented by the discussion below, we affirm the district court's grant of summary judgment to the defendants.

A. Facial First Amendment Challenge to Inmate-Mail Regulation

In rejecting the plaintiffs' facial First Amendment challenge to the inmate-mail regulation, the district court correctly applied the four-part test set forth in Turner v. Safley, 482 U.S. 78 (1987). See Beard v. Banks, 548 U.S. 521, 528-29 (2006) (plurality opinion); Thornburgh v. Abbott, 490 U.S. 401, 413-19 (1989). The plaintiffs agree that the Turner standard applies but challenge the district court's determination that the inmate-mail regulation survives scrutiny under that standard. None of the plaintiffs' objections to the district court's Turner analysis is availing.

As to the first Turner factor--whether the regulation is rationally related to a legitimate governmental interest, Turner, 482 U.S. at 89--the plaintiffs do not dispute that prison security

-2-

is a legitimate governmental interest, nor could they. <u>See</u> <u>Thornburgh</u>, 490 U.S. at 415 (finding legitimacy of that interest to be "beyond question"). Rather, they fault the district court for deferring to former Commissioner Bender's view, "[b]ased on [his] experience and professional judgment, [that] the allowance of publications into correctional institutions which contain sexually explicit material or feature nudity is . . . detrimental to . . . the safety and the security of the institution."

That argument fails. "[T]he judiciary[, which] is 'ill equipped' to deal with the difficult and delicate problems of prison management," <u>id.</u> at 407-08, "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them," <u>Overton</u> v. <u>Bazzetta</u>, 539 U.S. 126, 132 (2003); <u>see also</u> <u>Beard</u>, 548 U.S. at 535, particularly with respect to matters affecting prison security, <u>Beard</u>, 548 U.S. at 536; <u>Poirier</u> v. <u>Mass. Dep't of Correction</u>, 558 F.3d 92, 96 (1st Cir. 2009). Here, deference to the Commissioner's views was particularly appropriate because those views were based on his long and varied experience as a corrections official and buttressed by concrete examples of how restricting prisoners' receipt of sexually explicit materials is related to prison safety and security. Thus, the district court appropriately relied on the Commissioner's

affidavit to establish the requisite rational connection between the legitimate government interests articulated there and the chosen means of furthering them. Beard, 548 U.S. at 541-42.

The plaintiffs' contentions that the defendants were required to provide direct evidence of the incidents cited in the Commissioner's affidavit and to prove that the incidents were actually caused by inmates' exposure to sexually explicit material inverts the proper burden of proof. "The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Overton, 536 U.S. at 132. Those arguments also reflect a misunderstanding of the nature of the inquiry. Determining whether a challenged regulation is rationally related to a legitimate governmental interest does not require making factual findings that the regulation will, in fact, serve its intended purpose. Turner, 482 U.S. at 93 n.*.

Here, the plaintiffs attempted to meet their burden by submitting affidavits and exhibits purportedly demonstrating the irrationality of the regulation or the existence of disputed facts, as was their prerogative under Rule 56(e) of the Federal Rules of Civil Procedure. See Beard, 548 U.S. at 534. Although, with respect to issues of fact, the district court was required to "draw 'all justifiable inferences' in [the plaintiffs'] 'favor,'" id. at 529 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)), no such requirement applies to matters of professional

-4-

judgment. Id. at 530. In such matters, the district court was required to "accord deference to the views of prison authorities," id., not to the plaintiffs' views as to whether the regulation serves its stated purposes. To the extent that the plaintiffs' submissions focused on the effect of the regulation on their rights, those submissions were irrelevant to the first Turner factor, the regulation's rational connection to a legitimate purpose. "'Rational basis review does not permit consideration of the strength of the individual's interest or the extent of the intrusion on that interest caused by the [regulation]; the focus is entirely on the rationality of the state's reason for enacting the [regulation].'" Poirier, 558 F.3d at 96 (quoting Cook v. Gates, 528 F.3d 42, 55 (1st Cir.), petition for cert. filed, 77 U.S.L.W. 3400 (U.S. Dec. 23, 2008)).

Thus, the district court correctly concluded that the crucial first Turner factor weighs in the defendants' favor. Moses, 523 F. Supp. 2d at 62. The remaining factors serve only as further checks on the regulation's reasonableness. Beard, 548 U.S. at 523.

As to the second Turner factor--whether there are "alternative means of exercising the right that remain open to prison inmates," Turner, 482 U.S. at 90--the plaintiffs argue that they do not have alternative means of receiving sexually explicit materials. That argument defines the "right" in question too

narrowly. Thornburgh, 490 U.S. at 417 (requiring that "'the right' in question be viewed sensibly and expansively"). Where, as here, "the [inmate-mail] regulation permit[s] a broad range of publications to be sent, received, and read, th[e] [second Turner] factor is clearly satisfied." Id. at 418. Moreover, even if no alternative means of receiving publications existed, that "would not be conclusive . . . [but] would [only] be some evidence that the regulation[] w[as] unreasonable." Overton, 539 U.S. at 135.

As to the third Turner factor--"the impact [that] accommodation of the asserted constitutional right w[ould] have on guards and other inmates, and on the allocation of prison resources generally," Turner, 482 U.S. at 78--the plaintiffs rely on extra-record material attached to their appellate brief to argue that allowing unrestricted access to sexually explicit publications would have no adverse impact. Assuming that we may consider the cited materials as evidence of "legislative," as opposed to "adjudicative," facts, see Daggett v. Comm'n on Governmental Ethics and Election Practices, 172 F.3d 104, 112 (1st Cir. 1999), we nevertheless give greater weight to "'the informed discretion of corrections officials,'" Thornburgh, 490 U.S. at 418 (quoting Turner, 490 U.S. at 90), who are most familiar with the difficulties of managing their own institutions, than to the more general views expressed in the cited materials as to other means of addressing sexual violence in prison.

-6-

As to the fourth and final Turner factor--"the absence of ready alternatives," Turner, 482 U.S. at 90--the plaintiffs do not argue for the alternative considered and rejected by the defendants, i.e., allowing receipt of sexually explicit materials on a case-by-case basis. Instead, they argue that allowing inmates to receive all publications as long as they are not "obscene" as defined by state law is a readily available alternative. But, as discussed above, that alternative would have more than a de minimus adverse effect on legitimate penological interests and therefore is neither an "obvious" nor an "easy" alternative solution, Thornburgh, 490 U.S. at 418, to the problems that the regulation was intended to address. Therefore, the district court correctly concluded that plaintiffs had not met their burden of satisfying the "high standard" for demonstrating the existence of a "ready alternative." Overton, 539 U.S. at 136.

B. As-Applied Challenge to the Inmate-Mail Regulation

The plaintiffs make two arguments with respect to the district court's upholding of the inmate-mail regulation as applied. First, they challenge the exclusion of portions of a National Geographic article as being unrelated to the governmental interest in rehabilitation. However, without copies of the excluded material or even specific descriptions of it, it was impossible for the district court (and is equally impossible for this court) to determine whether the regulation is invalid as

applied to that material. To the extent that plaintiffs argue that the National Geographic materials fell within the regulation's exception for "material illustrative of . . . anthropological content," 103 C.M.R. § 481.15((3)(d), that is a state-law issue, which the district court appropriately declined to address once it disposed of plaintiffs' federal claims. Cao v. Puerto Rico, 525 F.3d 112, 116 (1st Cir. 2008).[1]

The second issue raised under the as-applied rubric is that the regulation is not applied even-handedly. As evidence, the plaintiffs point to a memorandum indicating that at another institution inmates are permitted to receive material containing pictures of exposed buttocks, while at Cedar Junction, where most of the plaintiffs are incarcerated, they are not. The short answer to that argument is that the two institutions may not be similarly situated. There is therefore nothing arbitrary or capricious about applying the regulation more strictly at Cedar Junction than at the other institution. As the Supreme Court stated in upholding a similar regulation against a similar challenge, "The exercise of discretion called for by th[is] regulation may produce seeming

---

[1]Another state-law issue that plaintiffs advert to is whether some of the publications on the "prohibited publications list" in fact contain "nudity" or "sexually explicit" material within the meaning of the regulation. Although the district court's method of making that finding--i.e., taking "judicial notice" that many of the listed publications "invariably contain" such material, Moses, 523 F. Supp. 2d at 64--is dubious, the correctness of its finding on that state-law issue is not before us.

'inconsistencies,' but what may appear to be inconsistent results are not necessarily signs of arbitrariness or irrationality[,] [g]iven the likely variability . . . between institutions . . . ." Thornburgh, 490 U.S. at 417 n.15; see also Savard v. Rhode Island, 338 F.3d 23, 30-31 (1st Cir. 2003).

C.  Other Constitutional Challenges to the Inmate-Mail Regulation

The plaintiffs correctly point out that the district court failed to address the other constitutional challenges to the inmate-mail regulation that were added by their amended complaint, all of which stem from the purported inconsistency between the regulation and the state obscenity statute.  However, those challenges are not developed in the plaintiffs' brief, which merely alludes to the arguments made in their summary judgment memorandum.  Consequently, those challenges are forfeited.  R.I. Dep't of Envtl. Mgmt. v. United States, 304 F.3d 31, 47 (1st Cir. 2002).

D.  Challenges to the Cell-Decoration Policy

As the plaintiffs also point out, the district court did not expressly rule on the constitutionality of the cell-decoration policy.  Rather, it conflated that policy with the inmate-mail regulation, which it described as banning the receipt (as opposed to merely the display) of semi-nude and scantily clad images, Moses, 523 F. Supp. 2d at 58, 64, and then proceeded to uphold the constitutionality of that ban on its face, id. at 63,

and as applied, id. at 63-65. However, the absence of a separate ruling on the constitutionality of the cell-decoration policy is not fatal, since much of the district court's analysis of the Turner factors is equally applicable to the cell-decoration policy, and we review the district court's grant of summary judgment de novo, In re Citigroup, Inc., 535 F.3d 45, 50 (1st Cir. 2008), and are free to affirm it on any grounds apparent from the record, Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006).

To the extent that the plaintiffs challenge the policy on its face as violating the First Amendment, that challenge fails. "'In a facial attack . . ., it is plaintiff[s'] burden to show that the [policy] has no constitutional application.'" Del Gallo v. Parent, 557 F.3d 58, 68 (1st Cir. 2009) (quoting Naser Jewelers, Inc. v. City of Concord, 513 F.3d 27, 33 (2008)). "'The fact that [it] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.'" Dutil v. Murphy, 550 F.3d 154, 160 (1st Cir. 2008), cert. denied, 77 U.S.L.W. 3595 (U.S. Apr. 27, 2009). As recognized by Massachusetts courts in upholding a predecessor of the cell-decoration policy challenged here, the policy is reasonably related to legitimate governmental interests including prison security, Collins v. Mass. Dep't of Correction, No. 95-0153, 1995 WL 542517 (Mass. Super. Sept. 7, 1995) (unpublished);

Perito v. Duval, No. 91-2387 (Mass. Super. Feb. 25, 1992) (unpublished) (Red Br. Add. at 48-50), aff'd, 34 Mass. App. Ct. 1114 (1993) (table), and therefore is susceptible of constitutional application. Although those nonprecedential decisions are not binding on this court, their reasoning is persuasive and consistent with the Turner factors. The fact that the policy might be applied to prohibit the display of relatively innocuous pictures, such as a family outing at the beach, does not render the regulation invalid on its face. Dutil, 550 F.3d at 160.

In one conclusory sentence, plaintiffs also challenge the policy as impermissibly vague. As a threshold matter, it is doubtful that the plaintiffs here have standing to raise a vagueness challenge since the only picture in the record whose display was allegedly prohibited by the cell-decoration policy--a photograph of a woman wearing lacy underwear and a garterbelt and posing with her thighs spread apart--clearly falls within the terms "scantily clad," "semi-nude," or "sexually suggestive." Whiting v. Town of Westerly, 942 F.2d 18, 22 (1st Cir. 1991) (holding that "a plaintiff who engages in conduct that is clearly proscribed by the [challenged provision] cannot complain that the [provision] is vague on its face nor challenge the vagueness of the law as applied to the conduct of others"). Even if such standing exists, those terms

-11-

are not so subjective or indeterminate that an "ordinary person exercising ordinary common sense" would be unable to understand and comply with them.  <u>Welch</u> v. <u>United States</u>, 750 F.2d 1101, 1112 (1st Cir. 1985).  Consequently, the plaintiffs' vagueness challenge to the cell-decoration policy also fails.

Accordingly, the district court's judgment is <u>affirmed</u>.